RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0345P (6th Cir.)
File Name: 02a0345p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JAMIE L. MCFARLAND,
　　　　*Plaintiff-Appellant,*

　　　　*v.*

WILLIAM J. HENDERSON,
UNITED STATES POSTMASTER
GENERAL,
　　　　*Defendant-Appellee.*

No. 01-3517

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 00-07427—David A. Katz, District Judge.

Submitted: September 20, 2002

Decided and Filed: October 3, 2002

Before: DAUGHTREY, GILMAN, and GIBSON, Circuit
Judges.[*]

———————

[*] The Honorable John R. Gibson, Senior Circuit Judge of the United
States Court of Appeals for the Eighth Circuit, sitting by designation.

—————————

**COUNSEL**

—————————

**ON BRIEF:** Harland M. Britz, BRITZ & ZEMMELMAN, Toledo, Ohio, for Appellant.    Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

—————————

**OPINION**

—————————

RONALD LEE GILMAN, Circuit Judge.    Jamie L. McFarland brought suit against William J. Henderson, the United States Postmaster General, alleging that she was constructively discharged from her employment as a result of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964.    The district court granted summary judgment in favor of the Postal Service on the ground that McFarland had not timely initiated a grievance with the Equal Employment Opportunity Commission (EEOC) as required by law, and that no doctrine of equity excused that failure. McFarland now appeals.    For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

In March of 1999, McFarland began working for the United States Postal Service in Toledo, Ohio as a casual mail handler.    Her "casual" status meant that she was a temporary employee who did not receive extensive orientation or union representation.    McFarland alleges that on March 28 of that year, Robert Geronimo, her acting supervisor at the time, attempted to kiss her.    Although McFarland pulled away, Geronimo proceeded to say that he thought about her neck and lips while he exercized.    Two days after the attempted kiss, McFarland felt that Geronimo was being rude to her.

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

information from Lewis, McFarland told Petrusky that "Robert Geronimo was causing me problems again." The next day, McFarland contacted an EEO Counselor.

McFarland argued in the district court that this conduct, together with Geronimo's treatment of her dating back to the attempted kiss, amounted to "an environment permeated with unfounded lies about her alleged sexual promiscuity, her competence as an employee, her being assigned to less desirable work assignments, and having her hours reduced." Given that the above incidents occurred in June, and that her poor treatment by Geronimo allegedly stemmed from her earlier rejection of his sexual advance, McFarland has alleged facts sufficient to state a claim that a hostile work environment existed less than 45 days prior to the date of her first contact with the EEOC. We therefore conclude that McFarland satisfied the administrative requirements necessary for her to bring the present suit. In light of our conclusion that McFarland's grievance was timely initiated, we need not address her equitable estoppel and tolling arguments.

We reiterate that it is entirely understandable, given McFarland's concession on the issue of timeliness and the fact that the Supreme Court's decision in *Morgan* had not yet been issued, why the district court failed to determine the legal correctness of her concession. But it is the task of the court to apply the law as it is, not just as the parties describe it. The facts as set forth in the complaint and McFarland's affidavit, all of which must be construed in her favor when evaluating the Postal Service's motion for summary judgment, make it plain that she satisfied the 45-day grievance deadline under her hostile-work-environment claim. We therefore conclude that McFarland's lawsuit survives this procedural hurdle, although we express no opinion on the substantive merits of her complaint.

She then told Geronimo directly that she had no interest in him.

McFarland learned in April or early May of 1999 that unfounded rumors were being spread that she was sleeping with other male postal employees, that she gave Geronimo an "attitude" when he asked her to do things, and that she was talking to male employees instead of working. She believed that Geronimo was the source of these rumors. Approximately five weeks after the attempted kiss, McFarland spoke to Barbara Petrusky about her problems with Geronimo. Petrusky supervised both Geronimo and McFarland. McFarland complained that Geronimo was "in love with her," and that he unfairly made her operate a linear integrated parcel sorter (LIPS) machine more frequently than the other casual workers.

Petrusky told McFarland that she would speak to Geronimo about the matter. When Petrusky confronted Geronimo, he denied that he had either attempted to kiss McFarland or that he had spread rumors about her. He also agreed with Petrusky that sexual harassment is a serious issue. Petrusky, Plant Manager Randy Carter, and Kenneth Durden, another manager, each told McFarland that they had spoken to Geronimo about his behavior, and that he had assured them that he would "treat her professionally."

Sometime in June of 1999, Geronimo allegedly permitted a magazine to fall on McFarland's hand by failing to tell another employee to stop "keying" on a machine. McFarland also alleges that, throughout her employment, Geronimo refused to allow her to work during the lunch break as other casual employees were allowed to do in order to earn extra pay.

Monica Lewis, a coworker, confronted McFarland on June 22, 1999, telling McFarland that she had heard from Geronimo that McFarland had spread innuendos regarding Lewis and Eddie Robert, a union representative. McFarland then spoke a second time to Petrusky "because Robert Geronimo was causing me problems again." Petrusky

responded by informing McFarland that Petrusky had heard from Lewis that McFarland was spreading rumors about Petrusky sleeping with two men at the Post Office. McFarland attributed all of these false rumors to Geronimo.

The next day, on June 23, 1999, McFarland contacted an EEO Counselor about her problems with Geronimo. This was nearly 90 days after Geronimo had tried to kiss her. McFarland claims that she was unaware that she was required to contact the EEOC within 45 days of an act of discrimination. In support of her claim that she was unaware of the time limit, she submitted the affidavit of John Harvey, a maintenance director and union steward, who claimed that "in 1999, there were no notices or information posters 'posted' that informed 'casuals' about EEO complaint time limit requirements." Although the Postal Service disputes her alleged lack of notice, we are obligated to construe all facts and inferences in favor of the nonmoving party in reviewing the grant of a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

McFarland left her position as a casual mail handler in July of 1999. The Postal Service attributes this decision to the fact that she had been warned in June and July that her excessive absenteeism meant that any additional absences would result in the loss of her job. McFarland, on the other hand, claims that she was constructively discharged due to a hostile work environment created by Geronimo's sexual harassment.

A formal complaint was filed by McFarland with the EEOC in August of 1999. Based upon her complaint, the EEOC began an official investigation two months later. When the investigation was not completed within 180 days of its acceptance, McFarland filed the present suit, alleging that she had been discriminated against on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). The Postal Service moved to dismiss McFarland's action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. It argued that dismissal was proper

the Supreme Court recognized that the "very nature" of a hostile work environment "involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2073 (2002). The unlawful employment practice in a hostile work environment "occurs over a series of days or perhaps years and, in direct contrast to [claims based upon] discrete acts, a single act of harassment may not be actionable on its own." *Id.* "Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within [the applicable time period] of any act that is part of the hostile work environment." *Id.* at 2075. A hostile-work-environment claim thus has an effect similar to that of a continuing violation composed of successive discrete acts, in that the existence of the hostile work environment within the 45-day time limit causes the actionable violation to encompass conduct that occurred outside of the limit.

McFarland's EEOC grievance was therefore timely initiated if it was based upon a hostile work environment that existed less than 45 days before June 23, 1999. The harassing conduct in the present case was alleged to have "started on or about March 28, 1999," with Geronimo's attempted kiss and his comments about McFarland's lips and neck. McFarland perceived that Geronimo thereafter treated her differently than other casual employees, and that this treatment extended past May 9, 1999, which was 45 days before she initiated her EEOC grievance. The incident in which Geronimo allegedly permitted the magazine to fall on McFarland's hand occurred in June of 1999. McFarland's complaint that Geronimo refused her the option of working through lunch concerned conduct that took place throughout her tenure at the Toledo Post Office. As late as June 22, 1999, McFarland learned that Geronimo was speaking of her in a manner likely to cause McFarland to lose esteem in the eyes of her coworkers. Lewis confronted McFarland, saying that Geronimo had told her that McFarland had spread innuendos regarding Lewis and Eddie Robert, a union representative. Based upon this

of a legal standard to the factual findings of the trial judge in the bankruptcy court, we conclude that it is presented with sufficient completeness and clarity for this court to resolve it."). This is just such a case. In order to determine whether McFarland's grievance was timely initiated, we need only apply a principle of law to the facts as alleged in the complaint and McFarland's affidavit. We further note that our consideration of this issue will not unfairly prejudice the Postal Service, which has argued the substance of the continuing violation issue both in the district court and again on appeal.

Our decision to reach the issue of timeliness, despite McFarland's concession on this point, is being made in order to avoid "a plain miscarriage of justice." *Foster*, 6 F.3d at 407. We are not bound by the failure of her trial counsel to apply the law. Furthermore, this is not a case where McFarland is barred by judicial estoppel, because the district court did not adopt a representation made by her under oath. *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990) (holding that the doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted "under oath in a prior proceeding," where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition")(internal quotation marks omitted).

### C. McFarland timely initiated her grievance with the EEOC

We must construe all of the facts at the summary judgment stage of the case in McFarland's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), in deciding whether McFarland complied with the 45-day grievance deadline as a precondition to bringing suit. So even though the concept of "a continuing violation" did not enter into McFarland's argument in her district court filings, she pled from the very beginning that the Postal Service's acts of discrimination had created a hostile work environment. In an opinion filed after the district court decided the present case,

because McFarland had failed to contact the EEOC within 45 days of the alleged acts of discrimination as she was required to do in order to sue the federal government pursuant to Title VII. 29 C.F.R. § 1614.105(a)(1).

In her Memorandum in Opposition, McFarland conceded that her EEOC grievance had not been timely initiated. She argued, however, that "equity mandates that this Court hear her action," and asked "that the Court exercise its discretion and find that principles of tolling, waiver, and/or estoppel allow the case to be heard." The parties submitted affidavits to support their arguments as to waiver, estoppel, and tolling. As a result, the district court treated the Postal Service's motion to dismiss as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The district court issued a Memorandum and Opinion in March of 2001 that rebuffed McFarland's equitable arguments, and granted summary judgment to the Postal Service without reaching the substantive merits of her discrimination claim. On appeal, McFarland challenges the district court's conclusions regarding estoppel and equitable tolling, and contends for the first time that her EEOC claim was timely filed because she was subjected to "a continuing violation."

## II.  ANALYSIS

### A.  The 45-day time limit

In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of "rigorous administrative exhaustion requirements and time limitations." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976). The requirement at issue in the present case is that "[an] aggrieved person must initiate contact with a[n] [EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Because exhaustion requirements pursuant to Title VII are not

jurisdictional prerequisites, they are subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

## B.    The nature of McFarland's claim

In her Memorandum in Opposition to the Postal Service's motion to dismiss, McFarland conceded that her EEOC grievance was not timely initiated:

> Despite the fact that Plaintiff failed to comply with a 45-day time requirement for initiating EEO counseling, equitable principles of tolling, waiver, and estoppel mandate that Plaintiff's claims should survive and Plaintiff should have her day in court.

Given this concession, it is entirely understandable why the district court failed to address whether McFarland's grievance was in fact initiated within 45 days of the alleged discrimination. The court instead focused solely upon McFarland's equitable arguments. In light of the fact that "both McFarland and the Postal Service have seen fit to submit documents and affidavits in support of their positions with respect to McFarland's ability to bring her case despite having missed the EEO filing deadline," the district court also found it appropriate to "consider the motion to dismiss as if it were a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure."

With new counsel on appeal, McFarland now argues, contrary to her concession in the district court, that her EEOC grievance *was* timely initiated because she suffered from "a continuing violation" that was ongoing less than 45 days prior to June 23, 1999, the day that McFarland first contacted an EEO Counselor. A continuing violation exists where the plaintiff suffers from either (1) a series of discrete discriminatory acts that are anchored by at least one such act within the limitations period, or (2) where there has occurred a "longstanding and demonstrable . . . over-arching policy of discrimination." *Dixon v. Anderson*, 928 F.2d 212, 216-17 (6th Cir. 1993). This court has "long recognized that an

ongoing, continuous series of discriminatory acts may be challenged if one of those discriminatory acts occurred within the limitations period." *Alexander v. Laborers' Int'l Union*, 177 F.3d 394, 408 (6th Cir. 1999).

In order to reach the issue of whether McFarland's EEOC grievance was timely initiated, we face the question of whether we should deviate from our general rule against considering new arguments on appeal. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulffe*, 428 U.S. 106, 121 (1976). This court has held that, in general, "[i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court." *J. C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991).

The rule serves, among other things, to promote judicial economy. In the present case, the district court carefully considered each of McFarland's arguments in reaching its decision. The district court would presumably have addressed the timeliness issue if it had been raised. But judicial economy is not necessarily the highest value to consider in determining whether to hear a new argument on appeal. "We have, on occasion, deviated from the general rule in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice." *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (internal quotation marks omitted). For example, in *Pinney Dock and Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988), we stated that it may be appropriate to consider a new issue on appeal if it is "presented with sufficient clarity and completeness" for us to resolve the issue.

"The *Pinney Dock* exception is most commonly applied where the issue is one of law, and further development of the record is unnecessary." *Foster*, 6 F.3d at 407; *See, e.g., In re Allied Supermarkets, Inc.*, 951 F.2d 718, 725-26 (6th Cir. 1991) ("Because the issue in this case involves the application