**Arlene VIRGILIO, Plaintiff–Appellant,**

v.

**John E. POTTER, Postmaster General, Defendant–Appellee.**

No. 01–2004.

United States Court of Appeals, Sixth Circuit.

Feb. 24, 2003.

Before SILER and ROGERS, Circuit Judges; and GWIN, District Judge.*

SILER, Circuit Judge.

Plaintiff Arlene Virgilio appeals the district court's grant of summary judgment to Defendant John E. Potter, Postmaster General of the United States ("the Postmaster General"), on her claims of unlawful retaliation for EEO activity, and discrimination on the basis of race, sex, religion, and mental disability. We **AFFIRM.**

**I.**

Virgilio has had numerous bad experiences while working for the Postal Service.

Around Christmas 1991, Virgilio, a Jewish woman, complained about the Christian music played over the public address system. The management stopped the music, but Virgilio's religion became the subject of increased questioning and commentary, some of which she found offensive.

In August 1992, fellow postal worker Vanessa Boyd asked Virgilio. "Arlene if I buy a gun. can I use you for a target?" Boyd also repeated the threat to a supervisor in front of several co-workers. Vic Wurth, the branch manager, worked with postal inspectors to investigate the situation. concluding that Boyd had used "poor judgment," but was not threatening. Virgilio claims that she developed a mental handicap because of the incident.

In May 1993, the post office started an investigation to see if Virgilio was falsifying her quality control records or otherwise sabotaging the new Delivery Point Sequencing program ("DPS"). The investigation ended in November 1993 when the parties agreed that there was no evidence of falsification or DPS sabotage. Virgilio believes that the investigation was a pretext for further discrimination.

In February 1994, Wurth mentioned that employees should not warm up vehicles while on the clock. Virgilio commented to a fellow employee that the new rule was not fair because other employees were allowed to take breaks to go outside to smoke. Overhearing the comment, employee Stan Marone responded by saying "Kiss my ass." Virgilio complained to Wurth; Wurth asked Marone to apologize; Marone refused; and Wurth apologized on Marone's behalf. On multiple occasions in April 1994, Marone's bad behavior continued (including sneaking up behind Virgilio, making cackling sounds at Virgilio, staring at Virgilio, and pointing his finger like a

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

gun at Virgilio). Virgilio again complained to Wurth, who took no significant action to stop Marone's behavior.

Virgilio's other bad experiences include: (1) Wurth refused to cooperate with the Utica Police (Virgilio had requested the police to investigate Boyd), (2) Virgilio was required to submit to a fitness for duty exam and psychological evaluation, and (3) the management improperly wrote "waived" on Virgilio's overtime pay form.

On July 1, 1993, Virgilio sought Equal Employment Opportunity (EEO) counseling to address the Boyd incident. She alleged that she had "suffered disparate treatment and continuing harassment from management since the incident." On April 24, 1994, Virgilio sought EEO counseling to address the Marone incident and the management's failure to properly respond. The Equal Employment Opportunity Commission (EEOC) issued a decision finding no unlawful retaliation or discrimination. Virgilio then filed suit in federal court.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *See Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir.1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under this standard, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson*, 477 U.S. at 252. In making this determination, "[t]he evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

### A. Application of the Forty-five Day Requirement

The right to bring an action under Title VII is predicated upon "rigorous administrative exhaustion requirements and time limitations." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Here, the relevant requirement appears at 29 CFR § 1614: "An aggrieved person must initiate contact with a Counselor within forty-five days of the date of the matter alleged to be discriminatory." The district court found that only three incidents fell within the relevant forty-five day periods:[1] (1) the accusation of sabotaging the DPS program, (2) Marone's acts of scaring Virgilio by startling her from behind and making cackling sounds, and the management's subsequent inaction. (3) improperly writing "waived" on Virgilio's overtime pay form. The district court dismissed all claims related to other incidents.

We affirm the district court in dismissing Virgilio's claims involving discrete events of discrimination on the basis of race, sex, religion, and mental disability. However, the district court erred in strictly applying the forty-five day periods to limit evidence of cumulative (rather than discrete) forms of discrimination.

Specifically, evidence outside the forty-five day periods is relevant for Virgilio's hostile work environment claim.[2] After the district court issued its opinion in this case, the Supreme Court decided *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106

---

1. Virgilio initiated EEO counseling on July 1, 1993 and April 21, 1994. Therefore, there are two relevant 45 day periods: May 18, 1993–July 1, 1993 and March 7, 1994–April 21, 1994.

2. Virgilio has waived the continuing violation theory, as it was neither presented in the complaint nor in defending summary judgment.

(2002), and we decided *McFarland v. Henderson*, 307 F.3d 402 (6th Cir.2002). These cases establish that "the existence of [any act that is part of] the hostile work environment within the forty-five day time limit causes the actionable violation to encompass conduct that occurred outside the limit." *McFarland*, 307 F.3d at 408. In ruling on Virgilio's hostile work environment claim, the district court should have considered incidents that occurred within the relevant forty-five day periods *as well as other acts claimed which are part of the same unlawful employment practice. See Nat'l Railroad*, 122 S.Ct. at 2077.

## B. Hostile Work Environment Claim

In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court stated the standard applicable for hostile work environment claims:

> When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.

> \*   \*   \*   \*   \*   \*

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* at 21–23 (internal quotes and citations omitted).

■ Virgilio has gathered sufficient evidence from which a reasonable jury could find that her work environment was both objectively and subjectively hostile. It is clear that her relationships with fellow workers and supervisors were bad. However, her claim fails because on the facts alleged, no reasonable jury could find that her work environment was hostile *due to discrimination on the basis of race, sex, religion, or disability. See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir.2000). There is no significant evidence tying the harassment to her status as white, female, or disabled. Virgilio does allege that comments were made regarding her religion, but this "handful of discriminatory comments" does not make out a Title VII violation. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 760–61 (6th Cir.2000).

## C. Retaliation Claim

Finally, Virgilio argues that the district court wrongfully dismissed her retaliation claims. In order to establish a prima facie case of retaliation under Title VII. Virgilio must prove that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.2000) (emphasis omitted).

Here, Virgilio has provided no significant evidence that there was a causal connection between her EEO filings and the alleged harassment. Moreover, the alleged harassment was not the "severe or pervasive harassment" necessary to establish a prima facie case. Because Virgilio has not proven the elements of her prima facie case of Title VII retaliation, the dis-

trict court was correct in granting the Postmaster General summary judgment.

**AFFIRMED.**