**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0119n.06
Filed: February 15, 2007

**05-1091**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VERLYN RICHARDS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DEPARTMENT OF THE ARMY, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

PER CURIAM. The plaintiff, Verlyn Richards, is a former civilian employee of the United States Army who brought this Title VII action against the Department of the Army, claiming that she had been subjected to discrimination on the basis of her gender and to retaliation for engaging in protected activity. The district court granted summary judgment to the defendant, finding that the plaintiff had failed to exhaust her administrative remedies properly. In the alternative, the district court also held that Richards had not established a prima facie case on either claim or that she had failed to prove that the Army's explanations for its actions in regard to her employment were pretextual. On appeal, we conclude that the district court's decision on the merits was legally correct and affirm.

## I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Verlyn Richards graduated from law school in 1980 and worked as a lawyer in private practice for one year before being hired as a civilian attorney advisor in August 1981 for the Army Tank-Automotive & Armaments Command (TACOM).  TACOM, as the name suggests, handles all "tank automotive acquisitions and development" for the Army Materiel Command, which in turn is responsible for the research, development, and acquisition of "materiel for the soldiers of the United States Army and for the Department of Defense and our allies."

Over the years, Richards steadily advanced through the counsel ranks at TACOM and eventually applied for the position of chief command counsel, a position once held by Al Dawes, the plaintiff's first supervisor upon being hired at TACOM.  When Dawes retired early in the tenure of TACOM Commanding General Edward Andrews, Andrews reviewed the applications filed for the position and selected the plaintiff as the "most qualified" from a list of candidates, a list that included Al Kalt, the individual who served as interim counsel in the position for more than a year.  Richards accepted the job in January 1996 and began work as TACOM's first female civilian chief counsel in April of that year.  Richards continued to serve in that senior executive service position throughout the remainder of Andrews's command, through the command of General Roy Beauchamp, which lasted from July 1997 to August 1999, and after General John Caldwell succeeded Beauchamp.

Richards felt, however, that she was treated differently and less favorably as a female chief counsel than a male chief counsel would have been treated by her career-military bosses. Consequently, the plaintiff initiated administrative proceedings on June 7, 1999, by contacting the Equal Employment Opportunity office for the Army Materiel Command and alleging that she was the victim of gender discrimination. Following a hearing before a Department of Defense investigator, Richards also requested an evidentiary hearing before an administrative law judge. Prior to any such hearing, however, the plaintiff withdrew her request, and before a final agency decision could be entered, Richards filed this complaint in federal district court on October 29, 2002. Eventually, both Richards and the Secretary of the Army filed motions for summary judgment, contending that no genuine issues of material fact existed in the dispute. The district judge agreed, and after argument by counsel for the parties, granted summary judgment to the defendant. In doing so, the court ruled from the bench:

> First of all, the plaintiff apparently failed to exhaust – timely exhaust her administrative remedies on either of the claims that's on [sic] being presented to the Court . . . .
>
> Also the Court finds that she would not be able to establish a *prima facie* case, a hostile work environment or a retaliatory conduct, and summary judgment is granted because of the failure to set forth the elements of [a] *prima facie* case on plaintiff's part. None of the acts complained of – even if she had met the time limits – none of the acts complained of appear to have been based on sex or to be adverse treatment because of her sex.
>
> . . . . .
>
> Finally, if she had made a *prima facie* case of either retaliation or hostile conduct or hostile environment or simple discrimination, the legitimate nondiscriminatory reasons given by the Army, the Department of the Army

- 3 -

in this case, cannot be called pretext for discrimination. The legitimate nondiscriminatory reasons appear clearly on the undisputed facts presented to the Court to be true, legitimate nondiscriminatory reasons.

From that ruling, Richards now appeals.

## II. **DISCUSSION**

We review *de novo* the grant of summary judgment by a district court. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. A non-moving party cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor. *See Ciminillo*, 434 F.3d at 464.

## A. Exhaustion of Administrative Requirements

"In permitting federal employees to sue under Title VII [of the Civil Rights Act of 1964, 42 U.S.C. §§2000e - 2000e-17], Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion

requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)). *See also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("Undoubtedly, federal employees who allege that they have been victims of discrimination must exhaust their administrative remedies."). Relevant regulations relating to public sector employment require that aggrieved persons believing they have been discriminated against on the basis of sex "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a)(1). Because Title VII's exhaustion requirements are not jurisdictional, however, "they are subject to waiver, estoppel, and equitable tolling." *McFarland*, 307 F.3d at 406 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

In this matter, the plaintiff alleges numerous acts and decisions by Army personnel that, she claims, were motivated solely by a desire to discriminate against women. She does not, however, contend that all or even most of those specified acts occurred within the 45-day period prior to her June 7, 1999, contact with an Equal Employment Opportunity counselor. Instead, Richards argues on appeal "that the Army's failure to take remedial action by maintaining a pervasive policy of discrimination against Appel[ant] resulted in overlapping, continuing retaliatory violations, which accelerated with her continued protective activity."

- 5 -

Title VII indeed "does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to [45] days 'after' the single unlawful practice 'occurred.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). Nevertheless, "[i]n order for the charge to be timely, the employee [must] file a charge within [45] days of *any act* that is part of the hostile work environment." *Id.* (emphasis added). As argued by the defendant Secretary of the Army in his appellate brief, to hold otherwise and ratify Richards's proposition that mere maintenance of a hostile work environment without continuing acts of discrimination could lead to absurd results. As noted by the defendant, "If such a 'string along' theory were viable, a plaintiff could describe a discrete act, such as a demotion, as a hostile work environment claim by demanding it be rescinded every month for 12 months, and characterizing the persistent refusals as evidence of a hostile work environment."

The plaintiff does, however, contend that two qualifying acts occurred within the applicable 45-day period that ran from April 23, 1999, until the contact with the Equal Employment Opportunity counselor on June 7, 1999. She submits that one such act involved a conversation she had with General Beauchamp in early May 1999, shortly before Richards began long-term sick leave. According to the plaintiff's deposition testimony, during that conversation Beauchamp "asked me if there was anything that he had done that was related to my sickness, and I told him that yes, there was, and I went over [three alleged acts of discrimination, all of which occurred more than 45 days prior to

June 7, 1999]." However, mere recitation by the plaintiff of acts occurring outside the relevant time frame does not magically bring those acts within the applicable filing period. Richards cannot, therefore, rely upon this May 4 conversation to save her Title VII cause of action.

The plaintiff also directs our attention to a telephone call that she received in mid-May 1999 while on sick leave, informing her that her request for two additional attorney positions for the TACOM legal staff had been denied by Douglas Newberry, TACOM's chief of staff between 1995 and September 2001. The defendant insists that this "act" does not make Richards's June 7 contact with the counselor timely because the "alleged non-filling of two legal positions [was not] in any way motivated by gender or retaliation animus." But, the fact that the plaintiff's assertion cannot overcome the evidentiary hurdle placed in its path does not mean that Richards cannot legitimately *argue* that Newberry's decision had a discriminatory or retaliatory underpinning that served to create a hostile work environment at TACOM. At least arguably, therefore, the plaintiff has identified an alleged act of discrimination or retaliation that occurred within the 45-day period prior to her initial contact with the administrative process.

**B. Hostile Work Environment Claim**

Under Title VII, an employer may not discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Discrimination in violation of

this statutory prohibition may be found when a plaintiff establishes that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish such a hostile work environment claim, a plaintiff thus must demonstrate that:

> (1) she was a member of a protected class;
>
> (2) she was subject to unwelcomed sexual harassment;
>
> (3) the harassment was based on her sex;
>
> (4) the harassment created a hostile work environment; [and]
>
> (5) [the employer did not take] reasonable care to *prevent and correct* any sexually harassing behavior.

*Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999).

Without question, Richards, as a female, is a member of a class of individuals protected by the provisions of Title VII. The relevant questions in this appeal are whether the plaintiff was harassed at all by the defendant, whether any such harassment was based on sex, and whether it was sufficient to create a hostile work environment. In resolving these issues, we must judge the conduct in question "by both an objective and a subjective standard: The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997). "Among the factors to be considered [in determining whether an

environment can be considered sufficiently severe to justify a finding of a hostile work environment] are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (quoting *Harris*, 510 U.S. at 23). In sum, "the plaintiff's allegations must depict conduct that could be construed as pervasive enough to alter the conditions of her employment and to create an abusive situation." *Id.* However, "[i]solated incidents, . . . unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

In applying these principles to the facts presented by the plaintiff, it becomes clear that Richards has failed to satisfy her evidentiary burden of establishing a hostile work environment at TACOM. First, the incidents or patterns of conduct highlighted by the plaintiff cannot be considered harassment at all. Second, even if considered harassment, they were not based on Richards's gender and, most obviously, were not sufficiently egregious to create a hostile working environment. Moreover, considered in the aggregate, as they must be, the plaintiff's claims suggest no more than that she was quick to assert "harassment" or "gender discrimination" when a workplace decision simply did not go exactly as she desired.

Richards first asserts gender discrimination as a result of TACOM Chief-of-Staff Patrick Kirby occasionally addressing the plaintiff as "dear" and "young lady," and General Andrews referring to her at various times as "legal gal," "legal girl," "little legal gal," "little legal girl," "my girl attorney," "my gal attorney," or "my little legal eagle." Although plainly less than professional, Kirby's comments can hardly be considered objectively demeaning, harassing, or abusive. Furthermore, Andrews admitted in deposition testimony:

> And I have a habit of saying "guys" and "gals." And I say, "my acquisition guy," "my legal gal." And I said, I don't recall her saying that, but it would not be out of form for me to say that, because I would say, "my TARDEC guy" or "my legal gal" or my "TARDEC gal," which is a mannerism that I have used for a long time.

Andrews further testified that Richards never approached him about his use of the terms because, as he claimed, "I would have stopped immediately if I thought that was bothering her."

More disconcerting was hearsay testimony offered by Richards that, out of the presence of the plaintiff, Andrews once referred to bell curves on a chart as resembling "a pair of woman's tits" and that the general spoke with other individuals "about women's body parts" in general, and Richards's body parts in particular. Such comments were clearly improper and have no place in a professional work setting. Nevertheless, nothing in the record before us indicates that they were anything other than isolated examples of boorish behavior. As we noted in *Clark*, "Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing'

- 10 -

are not sufficient to establish liability." 400 F.3d at 352 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Richards also claims gender discrimination in the decisions of Generals Andrews and Beauchamp to have her sit behind them at video teleconferences with other Army commands. The testimony in the record is uncontroverted that these teleconferences were conducted in a small room with seating for only seven individuals around the table and 13 additional seats in a second row that did not appear on the video camera. Moreover, both generals testified without contradiction that the seating arrangements were not based on gender or rank, but rather upon the need to have certain advisors nearby during the meetings. Indeed, an examination of the seating charts at teleconferences both before and after the plaintiff eventually secured a seat on-camera shows that the commanding generals were always flanked at the table by their chiefs-of-staff and deputy commanders. Moreover, when Richards was seated in the second row of seats, she would have had much easier access to the commanding general to offer legal advice than when seated farther away at the table.

Richards's other assertions of discriminatory acts are even less substantial than the allegations discussed above.[1] Clearly, none of the actions alleged by the plaintiff implicate

---

[1]These additional complaints include: not being allowed initially to serve as the ultimate reviewer of the work of off-site legal staff (who were instead rated by the commanding generals supervising their various areas of command and who did not desire to relinquish that supervisory control); not being allowed to speak with attorneys stationed in Anniston, Alabama, without the permission of the depot commander, Greg Potts, who did not want the plaintiff to impose new duties upon his legal staff; not being granted funding for additional legal positions at TACOM during a period of drastic downsizing in the entire Army; not being given a packet

gender considerations or can singly be considered severe enough "to alter the conditions of her employment and to create an abusive situation." *Clark*, 400 F.3d at 351. Pursuant to the teachings of *Harris* and its progeny, however, we are also instructed to examine hostile work environment allegations using a totality-of-the-circumstances test. *See Harris*, 510 U.S. at 23. Such an analytic framework "must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Williams*, 187 F.3d at 563. Consequently, "courts must be mindful of the need to review the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility." *Id.* Even doing so in this case, however, the evidence adduced by the plaintiff cannot establish the severe or pervasively abusive atmosphere necessary to support a finding of a hostile work environment.

Furthermore, Richards cannot point to any evidence, other than her own suppositions, that would directly or indirectly establish a material dispute over whether the decisions of which she complains were caused by gender discrimination. Other than isolated comments regarding female body parts, every instance of alleged discrimination

---

of slides at a meeting, due to a misunderstanding (although the plaintiff participated fully in the meeting and was allowed to "share" slides and materials with other meeting attendees); not receiving discretionary performance bonuses every year (even in years in which Richards also received substantial step increases in salary); not being granted a position on an internal performance review board after "resigning" from the board in a dispute over the directions given to panel members; not being allowed to consolidate her legal staff in renovated facilities that would have required expenditures of at least $400,000 at a time when no new construction was authorized due to lack of funds; and not being assigned as legal advisor on a major acquisition project headed by a Pentagon official who selected instead a deputy chief counsel with whom the project leader had worked previously and who had "experience in sensitive and complicated electronics weapons systems acquisitions."

highlighted by her was driven by such gender-neutral considerations as expediency, reluctance of military officers to relinquish control over subordinates, finances, or demonstrated superiority of other individuals in special circumstances. Because Richards has thus offered no indication that she was treated differently than male counterparts *because of her gender*, the district judge did not err in concluding that the plaintiff failed to establish a *prima facie* case of hostile work-environment gender discrimination.

## C. Retaliation Claim

The plaintiff further contends that the perceived mistreatment that she received at the hands of the defendant was in retaliation for complaining to her superiors about the alleged gender discrimination. To prove a *prima facie* case of Title VII retaliation, a plaintiff must show that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis in original removed).

The burden of establishing such a *prima facie* case is not, however, an onerous one and is relatively easily satisfied. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th

- 13 -

Cir. 2000). Once the *prima facie* case is established, the burden of production then shifts to the employer who must articulate a legitimate, nondiscriminatory reason for its actions. *See Morris*, 201 F.3d at 793. "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* (citations and internal quotation marks omitted).

The reasons articulated by the defendant in this matter for the actions and decisions to which the plaintiff objects were reasonable, legitimate, and not proven by Richards to be pretexts for invidious discrimination, or indeed anything other than acceptable rationales for typical business decisions. For example, the seating assignments for the video teleconferences about which the plaintiff complained were developed with an understanding that the commanding generals should be accompanied at the table by those individuals who assisted them in carrying out their leadership responsibilities. The decisions not to allow Richards the ultimate power to rate off-site attorneys were justified by the command leaders' desire to have input in the evaluations of the personnel under their direction. Determinations of staffing needs, bonus payments, and the desirability of new construction were driven in large measure by financial considerations in a time of downsizing and fiscal reductions. Furthermore, Richards was not denied meaningful access to relevant meetings and should not be heard to complain about not being placed on a performance review board when she asked not to participate on the body due to her disagreement with the mandate of the board. Finally, the designation of a particular attorney to assist in an acquisition project was influenced not by any retaliatory animus, but

rather by a recognition of the counsel's expertise and by the project commander's familiarity with the lawyer.  Under such circumstances, the district court properly granted summary judgment to the defendant on Richards's retaliation claim as well.

### III. <u>CONCLUSION</u>

For the reasons set out above, we AFFIRM the grant of summary judgment to the defendant, based on Richards's inability to establish that any actions of which she complains contributed to the creation of a hostile work environment or could be considered retaliation for protected conduct.