NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0228n.06

No. 12-1895

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 05, 2013*

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ALICIA BROWN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF MICHIGAN |
| JOHN E. POTTER, Postmaster General, | ) |
| | ) |
| Defendant-Appellee. | ) |

Before: BOOGS, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Alicia Brown worked for the Postal Service, where she and her supervisor did not get along. Brown filed this lawsuit against the Postmaster General under Title VII, alleging that her supervisor discriminated against her on the basis of race and gender and retaliated against her based on protected conduct. The district court granted the Postmaster General's motion for summary judgment. We affirm.

Brown worked as a customer service manager at the Wayne Post Office in Westland, Michigan, where Kevin Brandon was one of her supervisors. Over a period of about two years, Brown alleges that Brandon was overly critical of her to other employees, even calling her a liar at one point. On top of that, Brandon denied her requests for training, tried to make her work long hours on Mondays, made her schedule her own replacements when she was out and had his secretary keep a file of their correspondence.

On November 4, 2008, Brown took an assignment at a post office in Dearborn, Michigan, with the same title and pay but at a lower grade level. The next day, Brandon sent two e-mails to a manager at Dearborn, Cheryl Skotak, calling Brown a "peach," saying she was "stupid" and asking Skotak to "make sure [Brown] fails miserably." R.56-15. That same day, Brown filed a charge with the Equal Employment Opportunity Commission, not long after which she filed this lawsuit under Title VII, 42 U.S.C. § 2000e *et seq.*

Brown's complaint raised several theories of relief: disparate treatment based on race and gender, hostile work environment and retaliation. The district court rejected all of her claims as a matter of law. She appealed.

*Disparate treatment claims.* One initial problem with these claims is timing. Many of the challenged incidents happened long ago, too long ago to support relief. Federal employees must contact the Commission within 45 days of alleged discrimination in order to preserve the right to sue. 29 C.F.R. § 1614.105(a); *see McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002). In this instance, as a result, any acts before September 21, 2008, lie beyond the limitations period. Brown counters that, so long as one of the incidents comes within this window, it brings the rest along with it under a "continuing violation" theory of discrimination. That theory works for hostile work environment claims (more on that in a moment), but it does not work for relief based on "discrete acts" of disparate treatment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Only three "discrete acts" fall within the limitations period: Brandon's attempt to require Brown to

work a 12-hour shift on Mondays, which occurred on October 27; Brown's decision to take an assignment at Dearborn on November 4; and the November 5 "peach" e-mails.

Brown claims that the three charged acts suffice to show direct evidence of discrimination. But she did not take that position below and accordingly has forfeited the argument. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

She did preserve her claim based on indirect evidence of disparate treatment. But it fares no better. Under the *McDonnell Douglas* framework, Brown must make out a prima facie case of discrimination, requiring her to show: (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 892–93 (6th Cir. 2012). Her first problem is that she cannot identify an "adverse action"—a "materially adverse change" in employment conditions—by the post office. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (internal quotation marks omitted).

None of the three incidents rises to this level. Brown transferred to Dearborn voluntarily, and she offers no support for a forced-transfer theory of liability. Her new position, moreover, was substantially the same as her old one, offering the same duties, pay and benefits and differing only in the grade level at which the Postal Serviec ranked it. *See Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (finding grade level change not adverse because plaintiff "continued to receive the same salary and benefits"); *see also Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010)

(discussing types of transfers that count as adverse actions). As for the longer Monday hours, Brandon proposed them, but Brown never had to work them. As for the "peach" e-mails, Brandon sent them after Brown transferred, and they had no effect on "the terms or conditions of [her] employment." *Nguyen*, 229 F.3d at 562. In the absence of an adverse action, Brown has no threshold case.

Nor does Brown have a cognizable theory of pretext when it comes to the suggested Monday schedule. If a plaintiff raises a prima facie case of disparate treatment but the employer suggests a legitimate, nondiscriminatory reason for the adverse action, the plaintiff must show pretext—that the proffered reason for the employer's action masks a discriminatory motive. *Serrano*, 699 F.3d at 893. Brandon asked Brown to work longer hours on Mondays to cover for another supervisor, and the record shows that this was not an uncommon arrangement. *E.g.*, R.65-1 ¶ 7. The only evidence of pretext are the "peach" e-mails, which do not suffice by themselves to create a triable issue of fact over this claim.

*Hostile work environment*. This claim also falls short. All of the incidents in Brown's complaint bear on this theory of relief, including the allegations that Brandon called her "stupid" and a "liar" in 2007 and early 2008. But while Brandon and Brown no doubt did not get along and while the charges no doubt suggest that Brandon was not an ideal boss, Title VII does not create a workplace "civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). To succeed, Brown must show that Brandon's conduct was "severe or pervasive enough to create an environment" that both she and a reasonable employee would find "hostile or abusive." *Bowman*

*v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). Unfortunately for Brown, isolated derogatory comments, unless extreme, do not suffice. *See Faragher*, 524 U.S. at 788. As the district court correctly concluded, that is what Brandon's comments come to, and Brown's additional complaints about training and staffing cannot fill the void. The district court correctly rejected this claim as a matter of law.

*Retaliation*. Brown separately alleged that Brandon retaliated against her based on protected conduct. But she did not raise this claim with the Commission. The district court found it unexhausted, *see* 42 U.S.C. § 2000e-5(f)(1); *cf. Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379–81 (6th Cir. 2002), and Brown does not challenge that ruling on appeal.

For these reasons, we affirm.