*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0379p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SECRETARY OF UNITED STATES AIR FORCE,
  *Plaintiff-Appellee,*

  *v.*

COMMEMORATIVE AIR FORCE,
  *Defendant-Appellant.*

No. 08-4084

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 06-00122—Thomas M. Rose, District Judge.

Argued: October 14, 2009

Decided and Filed: November 2, 2009

Before: KENNEDY and ROGERS, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Garry L. Montanari, MICHEALIS, MONTANARI & JOHNSON, P.C., Westlake Village, California, for Appellant. Patrick D. Quinn, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee. **ON BRIEF:** Garry L. Montanari, MICHEALIS, MONTANARI & JOHNSON, P.C., Westlake Village, California, Jerry Alan Eichenberger, EICHENBERGER & BUCKLEY, LPA, Dublin, Ohio, for Appellant. Patrick D. Quinn, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee.

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.  The Commemorative Air Force appeals the district court's order granting summary judgment for the Secretary of the United States Air Force, denying the CAF's motion for summary judgment, and terminating this action for title to a historic fighter aircraft.  The USAF filed suit in the district court below for breach of contract, replevin, and a declaratory judgment that the CAF violated the terms of a 1966 donation certificate concerning an F-82 aircraft.  Because there is no genuine issue of material fact that the CAF's attempt to trade the F-82 violated the terms of the 1966 donation certificate, which called for title to revest in the USAF if the CAF no longer desired to retain the aircraft, the district court properly granted summary judgment to the USAF on all claims.

The Commemorative Air Force, formerly known as the Confederate Air Force, is an organization that seeks to honor the military by returning vintage aircraft to flying condition.  In 1966, the CAF entered into discussions with the USAF about acquiring an F-82 for the CAF's collection of combat aircraft.  After several letters between the parties, Air Force Logistics Command sent a letter to the CAF with two attachments: a copy of a letter to the Commander of Lackland Air Force Base (where the F-82 was then on static display) authorizing the conditional release of an F-82 aircraft, and "two copies of a donation certificate for the F-82 under consideration" with a request that one copy be returned as soon as possible.  The donation certificate stated:

> In order to induce the United States Air Force (hereinafter referred to as the "Donor") to donate a[n] F-82 aircraft, SN 44-65162 (hereinafter referred to as the "donated property") to be used for display to Confederate Air Force Museum (hereinafter referred to as the "Donee"), the Donee represents and warrants that it is a nonprofit chartered museum and that the Donee accepts the donation of the donated property subject to the following terms and conditions, the due observance of which is essential to the validity and continuance of the donation:
>  . . . .

2.  If at any time the donated property is no longer used for the purpose and/or end use for which it is donated or retention of the property is no longer desired, title to the donated property shall, at the option of the Government, revest in the Air Force; provided however, that if the Government does not exercise said option within 60 days after receipt of written notice, it shall be deemed that the Government does not elect to exercise the option, however, the Donee agrees prior to disposing of the donated property, to demilitarize the property to the extent required by the Government policy in effect at the time of the disposal.
. . . .
4.  Delivery of the donated property to the Donee, and the repossession of all or any part of the donated property by the Donor, shall be at no cost or expense to the Donor and the Donee shall pay all freight and transportation charges.

L.P. Nolen signed the Donation Certificate as President of the CAF on April 18th.

After accepting the F-82, the CAF began taking steps to restore the aircraft to flying condition and to secure permission for flight. In June of 1966, the Commander of Lackland Air Force Base acknowledged receipt of a letter from the CAF regarding a request for permission to fly the F-82 and advised the CAF to contact USAF Headquarters. The CAF then requested permission from USAF Headquarters to fly the F-82. The USAF responded that the Air Force General Counsel had determined in June of 1967 that all donations of surplus aircraft pursuant to 10 U.S.C. § 2572 must contain "no-fly" clauses, but because the F-82 was donated before the clause was required, USAF Headquarters was referring the matter to the General Counsel's Office. The CAF then received a letter from the Deputy General Counsel of the Air Force, stating that because the F-82 was donated prior to the no-fly clause requirement, the appropriate Air Force element could grant the CAF permission to fly the aircraft. Several months later, CAF President Nolen wrote to the Chief of the Research Division of the Air Force Museum at Wright-Patterson Air Force Base, informing the USAF that "[t]he F-82 has been repaired and we now have permission to fly it." A few days after that, General Gerrity informed the CAF by letter that because "the donation certificate executed with

respect to the P-82[1] did not contain a 'no-fly' clause, the CAF was under no Air Force Restriction on flying the aircraft."

Having secured permission from the USAF to fly the plane, the CAF next went about obtaining the necessary certifications from the FAA. The CAF received a letter from Air Force Logistics Command in January of 1968, stating, "Attached is a transfer certificate which you requested to establish title to the subject aircraft for purpose of obtaining FAA certification and license for the operation of this aircraft." The transfer certificate was addressed to "Whom it May Concern," and stated:

> This will certify that F-82B aircraft Air Force serial number 44-65162 has been officially donated by the Air Force to the Confederate Air Force, Mercedes, Texas, under the provisions of 10 USC 2572. The donee has further been authorized to move this aircraft from Kelly, AFB, Texas, to Mercedes, Texas by flight under the provisions of appropriate civil flight regulations.

The CAF was able to register the aircraft with the FAA, and the CAF flew the F-82 in numerous air shows until the plane crash landed in 1987.

After the crash landing, the CAF began trying to raise money to restore the F-82. The search for sponsors led the CAF to NPA Holdings, which offered to exchange a refurbished P-38 aircraft and the wreckage of another P-38 for the damaged F-82. The parties entered into an exchange agreement in September of 2002, and after a title search revealed no clouds of title on any of the aircraft involved, the parties moved forward with the exchange.

General Metcalf, director of the National Museum of the United States Air Force, learned of the trade in November of 2002 by reading an article in *Air Classics* magazine. In December, Metcalf sent CAF executive director Bob Rice a letter stating that the USAF considered the *Air Classics* article written notice that the CAF no longer desired to retain the aircraft and that the letter was formal notification that the USAF was

---

[1] F-82s were previously known as P-82s. The "P" designation stands for pursuit, while "F" stands for fighter.

exercising its option to retain title according to the terms of the donation certificate. The CAF disagreed that the USAF had a right to reclaim the aircraft, but contacted NPA and agreed not to go forward with the transaction. Although NPA had filed a bill of sale with the FAA, CAF directors met with NPA and requested that NPA transfer title to the F-82 back to the CAF. The CAF retained title to the aircraft until this lawsuit.

Discussions between the USAF and the CAF over the F-82 broke down, and on April 3, 2006, the CAF filed an action for declaratory judgment in the United States District Court for the Central District of California. On April 26, the USAF filed this action in the Southern District of Ohio. The Ohio district court stayed this action pending resolution of the California action, but lifted the stay once the CAF agreed to a voluntary dismissal of the California action. The parties filed competing motions for summary judgment, and the district court entered an order granting summary judgment for the USAF, denying the CAF's motion for summary judgment, and terminating the case. The district court concluded that the transfer of the F-82 was a donation subject to the terms and conditions of the 1966 donation certificate. The court found that there was no genuine issue of material fact that the CAF had breached those terms and conditions, and rejected the CAF's defenses to the application of the donation certificate. The CAF filed this timely appeal.

The USAF is entitled to summary judgment because there is no genuine issue of material fact that the CAF violated the terms of the donation certificate, which called for title to revest in the USAF if the CAF no longer wished to retain the F-82. The CAF took possession of the F-82 subject to the terms and conditions of the donation certificate. As the donation certificate states, "[i]n order to induce the United States Air Force . . . to donate a[n] F-82 aircraft . . . the Donee accepts the donation of the donated property subject to the following terms and conditions, the due observance of which is essential to the validity and continuance of the donation." One of those terms and conditions is that if "retention of the property is no longer desired, title to the donated property shall, at the option of the Government, revest in the Air Force . . . ." Neither party contests that the CAF's actions in transferring the plane to NPA violated the terms

of the donation certificate, and although the USAF argues that the article in *Air Classics* magazine was written notice that the CAF no longer wished to retain the aircraft, written notice is irrelevant. The CAF was required to provide notice to the USAF that it no longer wished to retain the aircraft, but the CAF's failure to do so has no effect on the USAF's ability to reclaim title because the CAF's transfer of the F-82 indicated it no longer wished to retain the aircraft. Because the CAF violated the terms and conditions of the donation certificate by attempting to transfer the aircraft to NPA, the USAF is entitled to reclaim the F-82 as provided by the donation certificate, at the expense of the CAF.

The CAF does not argue that its actions were consistent with the donation certificate. Rather, the CAF asserts various defenses to the application of the donation certificate. The CAF's primary arguments are that the 1968 transfer certificate superseded the donation certificate and, alternatively, that the USAF gave the CAF a right of disposal of the F-82 under the terms of the donation certificate by failing to elect to reclaim title to the F-82 when the CAF changed its use of the aircraft from "display" to "flight." Because nothing in the 1968 transfer certificate indicates any intent to supersede the 1966 donation certificate, because flight of the aircraft did not give the CAF a right of disposal, and because the CAF's remaining arguments are without merit, the USAF was entitled to summary judgment.

The CAF first argues that the 1968 transfer certificate superseded the 1966 donation certificate, but nothing in the 1968 transfer certificate indicated the intent of the USAF to relinquish its rights under the donation certificate. The transfer certificate states only that the aircraft "has been officially donated," and that the CAF has permission to fly the aircraft from Kelly Air Force Base to Mercedes, Texas, "under the provisions of appropriate civil flight regulations." Although the CAF claims that the USAF's granting of title was a separate act relinquishing all rights to the F-82, 49 U.S.C. § 44103(c) shows that between two parties claiming title to an aircraft, FAA registration is meaningless. The statutory provision states: "A certificate of registration issued under this section is . . . not evidence of ownership of an aircraft in a proceeding in which

ownership is or may be in issue." *Id.* Moreover, the transfer certificate itself acknowledges the USAF's continuing interest in the aircraft by stating that the CAF "has *further been authorized* to move this aircraft from Kelly AFB Texas, to Mercedes, Texas, by flight under the provisions of appropriate civil flight regulations." (emphasis added). If the USAF had relinquished its interest in the aircraft by unconditionally donating the F-82, the CAF would need no further authorization to fly the F-82 beyond the appropriate civil flight regulations. Additionally, the limited purpose for which the USAF provided the transfer certificate also shows that the USAF did not intend the transfer certificate to supersede the donation certificate. The USAF mailed the document "to establish title to the subject aircraft *for purpose of obtaining FAA certification and license for the operation of this aircraft*" (emphasis added).

According to the CAF, the Ohio law elements of an *inter vivos* gift and the district court's classification of the original transfer as a donation together indicate that the 1968 transfer certificate shows a new donative intent superseding the donation certificate. But the Ohio law of *inter vivos* gifts is not applicable to the transfer of an F-82 to a civilian entity.

Federal law, not the law of Ohio, controls the rights and obligations of the parties under the terms of the donation certificate. A government contract is governed by federal law when the contract was "entered into pursuant to authority conferred by federal statute, and, ultimately, by the Constitution." *United States v. Seckinger*, 397 U.S. 203, 209-10 (1970). In donating the F-82 to the CAF, the USAF was acting pursuant to Congress's grant of authority in 10 U.S.C. § 2572(a)(3), which states, "[t]he Secretary concerned may lend or give items described in subsection (c) that are not needed by the military department concerned . . . to any of the following . . . (3) a nonprofit military aviation heritage foundation or association incorporated in a State."

Under federal law, although the district court labeled the transfer of the aircraft a donation, the court properly concluded that the donation was subject to certain conditions that must be followed. *Wynne v. Commemorative Air Force*, No. 3:06-cv-122,

2008 WL 2622987, at *9 (S.D. Ohio July 1, 2008). The CAF's acceptance of those conditions created a government contract by meeting the four required elements of a government contract: (1) mutuality of intent to contract, (2) consideration, (3) lack of ambiguity in offer and acceptance, and (4) actual authority of the government representative to bind the government. *See D & N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003).

The CAF next argues that flight of the aircraft was a non-conforming use of the donated property that violated the terms of the donation certificate, and the failure of the USAF to reclaim title removed any restriction on the CAF's disposition of the F-82. As the CAF sees it, the donation certificate contains two conditions subsequent but does not specify whether the USAF's failure to exercise its option to reclaim title upon the occurrence of one condition subsequent releases the CAF from the other condition. The CAF argues that it does on the theory that the certificate is ambiguous and should be construed against the USAF as the drafter of the document. This argument fails because the donation certificate is not ambiguous and the CAF's flight of the aircraft did not render the donation certificate inapplicable.

A contract is ambiguous when it is susceptible to two or more reasonable interpretations, each of which is consistent with the contract language. *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993). The CAF's interpretation of the donation certificate does not create an ambiguity because such an interpretation is not consistent with the contract language. The donation certificate calls for title to revest at the option of the USAF upon the occurrence of one of two conditions subsequent. The CAF urges this court to read an additional term into the donation certificate, that if the USAF fails to exercise its option to reclaim title upon written notice of a change in use from display to flight, the USAF then is no longer able to reclaim title if the CAF transfers the aircraft. But nothing in the donation certificate compels this conclusion. It is a well-established principle of contract interpretation that a court should not read an ambiguity into a contract where none exists. *See, e.g.*, *Babinski v. Am. Family Ins. Group*, 569 F.3d 349, 352 (8th Cir. 2009).

Even if the contract had called for the occurrence of one condition subsequent to allow the CAF to dispose of the aircraft freely, the donation certificate would still be applicable because flight of the aircraft did not allow the USAF to reclaim title. In response to the CAF's request for permission to fly the F-82, the parties modified the agreement to permit flight. A government contract may be modified "by a later agreement that satisfies the law of contracts and applicable government requirements." *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1328 n.1 (Fed. Cir. 2003) (citing Arthur L. Corbin, *Corbin on Contracts*, § 574 (Interim ed. 2002)). In requesting permission to fly the aircraft, the CAF stated that the "aircraft will be restored to its original condition and made available for display and flight with other aircraft of the CAF fleet." The CAF also stated that its primary mission is to "restore and maintain *in flying condition* a complete collection of WWII combat aircraft." (emphasis in original). The USAF referred the matter to its General Counsel's office, which determined that because the aircraft was donated prior to a determination that "no-fly" clauses were required in all conditional donations, permission to fly the aircraft could be granted. General Gerrity provided that permission by informing the CAF that it was under no USAF restriction in flying the F-82 and by providing the necessary documentation for the CAF to register the aircraft for civilian flight. A contract may be established by multiple documents, as long as those documents establish the necessary elements of a government contract. *D & N Bank*, 331 F.3d at 1378. Although the CAF also contends that any purported modification to the contract would still trigger the reversionary clause because the modification changed the purpose of the donation from "display" to *only* "flight," the facts show the modification was not limited to flight only. The CAF, in its request for permission to fly the aircraft, stated that the F-82 would be "made available for display and flight with the other aircraft of the CAF fleet."

The CAF's remaining arguments are without merit. The CAF argues that by "undoing" the transaction with NPA and reclaiming title to the F-82, the CAF rendered this action moot; that allowing the USAF to reclaim title to the F-82 after over 40 years of ownership by the CAF would work an inequitable forfeiture; and that the USAF's

action for replevin was improper because the USAF did not have title to the F-82. However, a live case or controversy exists as to whether the USAF is entitled to reclaim title of the F-82, allowing the USAF to reclaim title to the aircraft would not work an inequitable forfeiture because the terms of the donation certificate clearly created a condition subsequent rather than a covenant between the parties, and the USAF's rights under the donation certificate entitle it to possession of the F-82, therefore giving the USAF a right to an action for replevin.  Because the CAF violated the terms and conditions of the 1966 donation certificate calling for title to revest in the USAF, and because the CAF has failed to establish that it should not have to return the F-82 to the USAF, the USAF is entitled to summary judgment.

For the foregoing reasons the order of the district court granting summary judgment to the Secretary of the United States Air Force and denying the Commemorative Air Force's motion for summary judgment is AFFIRMED.