NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0710n.06

No. 11-5169

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 03, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| FRED H. GILLHAM, SR., as Trustee for the TIMCO Employee Profit Sharing Plan & Trust, FBO Fred H. Gillham, Sr. | ) ) ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| TENNESSEE VALLEY AUTHORITY, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    BATCHELDER, Chief Judge; MCKEAGUE, Circuit Judge; and QUIST, Senior District Judge.[*]

QUIST, District Judge.

Defendant-Appellant Tennessee Valley Authority (TVA) appeals the district court's order granting summary judgment to Plaintiff-Appellee Fred H. Gillham Sr., as Trustee for the TIMCO Employee Profit Sharing Plan & Trust, FBO Fred H. Gillham, Sr. (Gillham or TIMCO), on TIMCO's breach of contract claim. The district court held that the TVA breached a commitment letter with TIMCO for the public auction of real property by allowing a second bidder to bid at the auction. Because the district court failed to apply the plain language of the commitment letter and

---

[*] Honorable Gordon J. Quist, Senior United States District Judge for the Western District of Michigan, sitting by designation.

instead improperly read additional terms into the parties' agreement, we reverse and remand with instructions to enter summary judgment for the TVA.

**I.**

The TVA is a "wholly-owned corporate agency and instrumentality of the United States," *Hill v. United States Dep't of Labor*, 65 F.3d 1331, 1333 (6th Cir. 1995). It is responsible for managing and developing lands and natural resources in the Tennessee Valley region. *See United States ex rel. TVA v. Welch*, 327 U.S. 546, 553, 66 S. Ct. 715, 718 (1946). In 1997, the TVA granted TIMCO an exclusive easement (the "Easement") on certain property (the "Property") located in Yellow Creek Port Industrial Park in Tishomingo, Mississippi, for a term of forty years. Among other things, the Easement required TIMCO to invest at least $500,000 to improve the Property and to use it solely for "constructing, operating, and maintaining facilities to manufacture large water craft and appurtenances thereto." TIMCO made the required improvements but was unable to attract a tenant that met the use restrictions.

In July 2005, TIMCO submitted a land use application to the TVA requesting that the TVA eliminate the Property's use restrictions. The TVA denied the request, but eventually suggested that it sell the Property outright to TIMCO through a public auction. TIMCO agreed to the proposal, and the TVA's board of directors approved the proposal. On February 2, 2007, the parties entered into a commitment letter (First Commitment Letter) containing the terms and conditions for a public auction of the Property. The First Commitment Letter set a minimum bid of $625,000 and required TIMCO to attend the auction and bid the minimum amount. The First Commitment letter also

provided that TIMCO would receive a credit of $425,000 for the improvements to the Property if TIMCO was the high bidder. The parties set a mutually-acceptable auction date of July 17, 2007. The TVA, however, cancelled the first auction and attempted to reschedule the auction for August 17, 2007. TIMCO objected to this date, and the sale was not rescheduled.

On November 26, 2007, the parties entered into another commitment letter for an auction sale of the Property (Second Commitment Letter). The terms of the Second Commitment Letter were very similar to those of the First Commitment Letter, with the exception that the minimum bid price was increased to $907,300 and the credit to TIMCO was increased to $653,000. Like the First Commitment Letter, the Second Commitment Letter contained requirements for TIMCO and other interested bidders to qualify to participate in the auction. Paragraph 1.D. provides:

> D. Financial Ability. TIMCO must qualify to bid at the auction by submitting evidence, satisfactory to TVA, in its sole discretion, of its financial ability to close the sale.

Paragraph 4 provides:

> 4. Auction. The proposed auction shall be held on a mutually acceptable date. Potential bidders other than TIMCO must qualify at least two (2) days prior to the date of the auction.

TVA and TIMCO set a mutually-acceptable date of December 21, 2007, for the auction, and TVA issued a Notice of Public Auction for that date at 8:30 a.m. CST at the Tishomingo County Courthouse. The Notice provided that "[i]n order to qualify to bid, TVA must receive, no later than 12:00 Noon CST on December 19, 2007, a letter of intent to bid and credentials, satisfactory to TVA, in its sole discretion, evidencing the financial ability to close the sale." Gillham, on behalf of

3

TIMCO, sent a letter of intent to bid and letter of credit to the TVA on December 12, 2007. On December 13, 2007, Will Wasdin ("Wasdin"), the TVA Realty Services paralegal assigned to handle the auction, sent Gillham an email notifying him that TIMCO had qualified to bid. On December 19, 2007, two days prior to the scheduled auction, Wasdin sent Gillham an email stating that TIMCO was the only qualified bidder, along with a copy of a Special Warranty Deed that the TVA would deliver upon the close of the auction on December 21, 2007.

On December 20, 2007, at approximately 10:00 a.m., as Wasdin was preparing to leave his office to travel to Tishomingo County, Mississippi, for the auction, he retrieved from the TVA mail cart a package from Dynasteel Corporation. Wasdin opened the package and saw that it contained bid documents for the auction. The package was postmarked December 12, 2007. Although Wasdin did not receive the package until December 20, 2007, it had been received at least a day earlier in the TVA's Chattanooga Mail Services Office. Delivery had been delayed, however, because the address did not contain a mail-stop number, i.e., an internal TVA address. Wasdin immediately called Rebecca Tolene, an attorney in TVA's Office of the General Counsel, who in turn notified Gillham's attorney of the situation. After investigating the matter, Tolene determined that the package was timely submitted and that Dynasteel should be permitted to bid at the auction. Through counsel, Gillham protested the TVA's decision to allow Dynasteel to bid.

The auction went forward as scheduled on December 21, 2007. Gillham attended the action and made the winning bid on behalf of TIMCO in the amount of $1.5 million.

Following the sale, TIMCO sued the TVA, alleging that it breached the Second Commitment Letter by allowing Dynasteel to bid at the December 21, 2007, auction.[1]  Following discovery, the parties filed cross motions for summary judgment.  The district court granted TIMCO's motion and denied the TVA's motion, concluding that the TVA improperly allowed Dynasteel to bid at the auction because Dynasteel failed to qualify before the deadline expired.[2]

**II.**

"Questions of contract interpretation, including those that form the basis for the grant of summary judgment, are subject to *de novo* review."  *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (citation omitted).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[1] TIMCO's breach of contract claim alleged that the TVA breached the First and Second Commitment Letters.  TIMCO also alleged that Wasdin's December 19, 2007, email was a separate contract that the TVA breached.  In addition to breach of contract, TIMCO alleged claims for unjust enrichment and violation the Freedom of Information Act.  TIMCO subsequently withdrew its Freedom of Information Act claim.

[2] Because TIMCO failed to address the First Commitment Letter in its summary judgment papers, the district court deemed that aspect of its claim abandoned.  In light of its ruling on TIMCO's claim for breach of the Second Commitment Letter, the district court declined to address TIMCO's breach of contract claim based on Wasdin's email.  Finally, the district court dismissed the unjust enrichment claim because the Second Commitment Letter was a valid contract covering the subject of the unjust enrichment claim.  The only claim at issue on appeal, therefore, is TIMCO's claim for breach of the Second Commitment Letter.

**III.**

**A.**

Because the contract at issue involves the United States and was entered into pursuant to a federal statute, federal common law applies. *United States v. Seckinger*, 397 U.S. 203, 209-10, 90 S. Ct. 880, 884 (1970); *King v. United States*, 301 F.3d 1270, 1275-77 (10th Cir. 2002). The general rules of contract law require that courts interpret contracts according to their "'plain meaning, in an ordinary and popular sense.'" *Univ. Hosps. of Cleveland v. S. Lorain Merchants Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)). "When clear contract language itself reveals the intent of the parties, it is unnecessary to turn to rules of construction." *TVA v. Exxon Nuclear Co.*, 753 F.2d 493, 496 (6th Cir. 1985); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1549 (9th Cir. 1989) (noting that the parties' intent must be ascertained from the contract itself when its terms are clear). Furthermore, the contract must be construed to give meaning to every word or phrase. *United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998).

The dispositive issue in this appeal is what must occur for interested bidders, other than TIMCO, to qualify to bid. Two provisions of the Second Commitment Letter are relevant. First, under paragraph 4., potential bidders "must qualify at least two (2) days prior to the date of the auction." Second, paragraph 1.D. specifies that a potential bidder qualifies "by submitting evidence, satisfactory to TVA, in its sole discretion, of its financial ability to close the sale." Giving these provisions their plain meaning, an interested party qualifies to bid by submitting to the TVA, two

6

days prior to the date of the auction, satisfactory evidence of its ability to close the sale. Applying this plain language, Dynasteel qualified to bid when it submitted, and the TVA received, its documents two days before the auction, by 12:00 Noon on December 19, 2007.

The district court held that the TVA's receipt of Dynasteel's documents, alone, was insufficient for Dynasteel to qualify because the TVA must, at a minimum, "open[] the envelope and glanc[e] at its contents to determine whether it includes documents in proper form." It reasoned that because the bidder's evidence must be "satisfactory to TVA," a TVA representative must review the evidence of financial ability to confirm that the bidder qualifies. In reaching this conclusion, however, the district court ignored the plain language of the agreement and instead read additional language into paragraph 1.D. conditioning qualification upon the TVA's review of the bidder's evidence. The qualification requirements, however, speak not in terms of what the TVA must do or determine, but instead address what the bidder must do–submit the satisfactory evidence two days prior to the sale. Moreover, the requirement that the evidence be "satisfactory to TVA" defines the quality of the interested bidder's evidence; it does not require that the TVA review the documents prior to the deadline. The district court's interpretation appears to have been influenced by its consideration of extrinsic evidence concerning the TVA's auction process. Because the language is unambiguous, however, the district court erred in considering extrinsic evidence to glean the parties' intent. "[A] court should not use extrinsic evidence to attempt to discern the intent of the parties, but rather should determine their intent from the plain language of the contract." *Royal Ins. Co. of Am.*, 525 F.3d at 421 (internal quotation marks omitted).

7

The district court also found that limiting paragraph 1.D. to the bidder's submission and the TVA's receipt would render the phrase "satisfactory to TVA, in its sole discretion" superfluous. We disagree. The character of the bidder's evidence does not change between the time of receipt and review. If Dynasteel's evidence was satisfactory to Wasdin when he opened the package and reviewed it–even after the deadline for submissions had expired–it was satisfactory at the time it was received in the TVA's mail room. For example, suppose that in order to qualify the TVA had required interested bidders to submit their bid documents on paper in a color satisfactory to the TVA. If the TVA determined that it would accept bid documents only on blue or red paper, a bidder who timely submitted bid documents on yellow paper would never qualify, but a bidder who submitted bid documents on a blue piece of paper would qualify upon the TVA's receipt of the bid package, regardless of when it was reviewed, because the color of the paper would be satisfactory to the TVA. Thus, the TVA's receipt of Dynasteel's package qualified Dynasteel to bid.

**B.**

TIMCO argues that a dispute of fact remains as to whether the TVA received Dynasteel's bid package before the qualifying deadline, thus precluding summary judgment for the TVA. We disagree.

According to the TVA's evidence, the mail arrives in the TVA's mailroom one time each day at 7:00 a.m. (Fichera Decl. ¶ 9.b.) Mail that contains a mail-stop number, or an internal delivery address, is sorted into pigeonholes and delivered at approximately 10:00 a.m. the same morning. (*Id.* ¶¶ 9c. and e.) Mail that lacks a mail-stop designation is placed into a bin to be looked up later in the

day, usually after lunch. (¶¶ 9.d. and g.; Stinson Dep. at 2.) Most of the lookup mail is delivered on the 10:00 a.m. mail run the day after it is received. (Fichera Decl. ¶ 9.g.) It is undisputed that Dynasteel's package did not contain a mail-stop number. The handwritten mail-stop number "SP3L" on the Dynasteel package indicates that the package was put in the lookup bin and that a mailroom employee wrote the mail-stop number on the envelope. (*Id.* ¶ 15.a.) The facts that the Dynasteel package contained a hand-written mail-stop number and was delivered to Wasdin between 10:00 a.m. and 11:00 a.m. on December 20 indicate that the package was received in the TVA's mailroom no later than approximately 7:00 a.m. the previous morning, when the mail was delivered. (¶¶ 15.c.- e.)

TIMCO cites two bases for an issue of fact. First, it contends that the Dynasteel package lacked a special TVA sticker that should have been attached pursuant to a recently-adopted junk-mail-reduction policy. The policy applied to mail that did not include a mail-stop number and required mailroom employees to place a sticker on the parcel instructing the recipient to advise the sender of the proper mail-stop number. TIMCO contends that the lack of such a sticker on the Dynasteel package creates a genuine issue of fact as to whether the sorting and delivering of the Dynasteel package was consistent with the TVA's other mailroom policies and procedures that would have delayed the delivery of the Dynasteel package to Wasdin. TIMCO also notes that TVA mail courier Charles Stinson testified that depending on his mailroom workload, he might lookup mail-stop numbers for lookup mail *prior* to the 10:00 a.m. mail run and include those pieces of mail in that morning's mail run. (Stinson Dep. at 22-23.) Thus, TIMCO argues, a trier of fact could

conclude that the TVA received the Dynasteel package on December 20 and delivered it to Wasdin the same day.

TIMCO's evidence fails to create an issue of fact. To survive summary judgment, a party must present more than a "mere . . . scintilla" of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). A party may not rest on speculation or a "mere possibility" of a factual dispute. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). That the Dynasteel package lacked a special sticker says nothing about whether it was handled in the usual manner for mail items lacking a mail-stop number. The sticker may have been omitted for a number of reasons, none of which has anything to do with the processing of lookup mail. As for the possibility that the Dynasteel package was processed the same morning it was received, this is no more than speculation. Based on decades of experience in the TVA's mailroom, Frank Fichera, the Manager of TVA Mail Services, stated that most lookup mail is done after lunch, and it "would be highly unusual for a piece of lookup mail to be looked up and be distributed on the 10:00 a.m. mail run on the day that it was received." (Fichera Decl. ¶ 9.g.) Indeed, Fichera confirmed that the mailroom received more mail in December–when the Dynasteel package was received–than at other times of the year because of the holidays, (*id.* ¶ 5), making it improbable that mailroom employees would have time to handle the lookup mail received that morning in time to include it in the morning mail run. Consequently, TIMCO can offer no more than speculation.

**IV.**

For the foregoing reasons, the judgment of the district court is **REVERSED** and **REMANDED** with instructions to enter summary judgment in favor of the TVA.

ALICE M. BATCHELDER, Chief Judge, dissenting. I dissent not because I find the majority's interpretation of the contract language wrong—to the contrary, I find it both persuasive and elegant, indeed, considerably more elegant than the contract itself. Rather, I dissent because I believe it is possible to reasonably disagree with that interpretation, in no small part due to the contract's noted inelegance. Thus, I would find this contract ambiguous and in need of trial to determine what the parties intended it to mean.

As the majority recognizes, the dispute in this case turns on two key sentences in the contract. The first is in ¶ 1.D., which defines what it means for TIMCO to "qualify." The second is in ¶ 4, which places a two-day, pre-auction deadline on when other bidders can qualify. Though no language directly defines what "qualify" means for other bidders, the parties agree that the ¶1.D. definition provided for TIMCO applies to other bidders as well. *See, e.g.*, TVA Br. at 22 n.13. Thus, the contract requires the following for other bidders to bid at the auction:

> [Other bidders] must qualify to bid at the auction by submitting evidence, satisfactory to TVA, in its sole discretion, of [their] financial ability to close the sale. [Other bidders] must qualify at least two (2) days prior to the date of the auction.

The parties' dispute over this language essentially boils down to a matter of timing: when must TVA review the submitted evidence to determine if it is satisfactory? Both parties agree that a bidder must submit its evidence before the two-day deadline. Further, and crucially, both parties agree that a bidder does not ultimately qualify to bid at the auction until TVA determines that the bidder's submitted evidence is satisfactory. *See, e.g.*, TVA Br. at 38 ("If TVA determines, in its sole discretion, that the [bidder's] evidence is not satisfactory, then the bidder . . . cannot bid at the

12

auction.") *and* 33 ("TVA had up to the start of the auction to determine whether a potential bidder had *qualified . . . .*" (emphasis added)). Where they part ways is that TIMCO argues that TVA must make the determination by the two-day, pre-auction deadline, while TVA argues that it can make that determination any time before the auction itself. TIMCO Br. at 21; TVA Br. at 33. While I agree with the majority that TVA has the better argument, I do not see TIMCO's approach as unreasonable.

Viewed in isolation, ¶ 1.D. favors TVA's timeline, establishing only that TVA must find a bidder's submitted evidence satisfactory in order for the bidder to qualify to bid at the auction; it does not require the pre-auction deadline for TVA's review. The only apparent time limit is that a bidder must qualify before the auction takes place ("to bid at the auction," a bidder "must qualify"), which is consistent with TVA's position on appeal regarding when it must make the qualification determination.

But TIMCO argues that ¶ 4 does create a deadline for qualification. It requires that bidders "must qualify at least two days" before the auction. This could reasonably be interpreted to mean that all the necessary elements of "qualify" must be completed by that time. Because a necessary element of qualification is TVA's determination that the submitted evidence is satisfactory, such an alternative interpretation would require TVA to determine that the evidence is satisfactory *before* the deadline.

TIMCO's approach is strengthened by the fact that TVA's argument requires interpreting "qualify" to mean something different in ¶ 1.D. than it does in ¶ 4. As TVA sees it, to "qualify" under ¶ 1.D. a bidder must have submitted evidence *and* TVA must have determined that the

evidence is satisfactory, but to "qualify" under ¶ 4 a bidder need only submit its evidence before the two-day deadline. Thus, under TVA's interpretation, a bidder who has "qualified" under ¶ 4 by submitting his materials before the two-day deadline can then be "disqualified" under ¶ 1.D.'s post-deadline (but pre-auction) review. Defining the same key term in the same contractual provision to mean two different things is questionable and supports recognizing the contract language as ambiguous.

The majority's approach offers a route around this ambiguity problem. In its analysis, qualification occurs simply because the bidder submits satisfactory evidence. Thus, a bidder who (1) submits evidence before the two-day, pre-auction deadline that (2) TVA finds satisfactory sometime after the deadline (3) "qualified" at the moment it submitted its satisfactory evidence. So how is it, as the district court asked below, that the evidence could be satisfactory to TVA without review? The majority answers, "The character of the bidder's evidence does not change between the time of receipt and review. If [the other bidder's] evidence was satisfactory to Wasdin when he opened the package and reviewed it—even after the deadline for submissions had expired—it was satisfactory" when it was submitted before the deadline, too. Maj. Op. at 8.

Though I find this persuasive, I do not think it solves the ambiguity problem. By reserving the satisfaction determination to its "sole discretion" and eschewing any explicit limitations on that discretion, TVA has arguably made its review an indispensable element of what it means to "qualify." Thus, it seems reasonable to read the contract as making TVA's exercise of judgment a necessary part of the qualification process—until TVA renders judgment, a bidder is not qualified.

14

Notably, that is precisely TVA's position on appeal: it will not allow a bidder to participate at the auction until it has determined that the bidder is, in fact, qualified. TVA Reply Br. at 21 (noting that the "sole discretion" language means that TVA "reserve[s] the right to consider a potential bidder's financial wherewithal before allowing it to bid").

Where contract language is susceptible to more than one reasonable interpretation, it is ambiguous. *Sec'y of U.S. Air Force v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009). The proper interpretation of ambiguous language turns on the intent of the parties and is an issue of fact, *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993), meaning that it ordinarily must be resolved at trial. Summary judgment is appropriate to resolve ambiguity only "where extrinsic evidence leaves no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Reardon v. Kelly Servs., Inc.*, 210 F. App'x 456, 458 (6th Cir. 2006). The state of the extrinsic evidence in this case does not permit such a conclusion, and neither the district court nor the majority found otherwise. I would remand this case for trial.