**Jon R. ROGERS, Plaintiff–Appellant,**

v.

**INTERNAL REVENUE SERVICE, Defendant–Appellee.**

No. 15–3409.

United States Court of Appeals, Sixth Circuit.

Argued: Dec. 2, 2015.

Decided and Filed: May 4, 2016.

**ARGUED:** Frank J. Bruzzese, Bruzzese & Calabria, Steubenville, Ohio, for Appellant. Gretchen M. Wolfinger, United States Department of Justice, Washington, D.C., for Appellee. **ON BRIEF:** Frank J. Bruzzese, Bruzzese & Calabria, Steubenville, Ohio, David W.T. Carroll, Carroll, Ucker & Hemmer, LLC, Worthington, Ohio, for Appellant. Gretchen M. Wolfinger, Francesca Ugolini, United States Department of Justice, Washington, D.C., for Appellee.

Before: NORRIS, CLAY, and COOK, Circuit Judges.

NORRIS, J., delivered the opinion of the court which COOK, J., joined, and CLAY, J., joined in part. CLAY, J. (pp. 858–66), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiff Jon Rogers ("Rogers") appeals the district court's grant of summary judgment to defendant Internal Revenue Service (the "IRS"). For the reasons that follow, we affirm the district court's decision.

## I.

Before Rogers brought the instant action, the IRS conducted a criminal investigation into several businesses owned by Rogers and two of his associates. Following the investigation, the IRS seized millions of dollars from Rogers and initiated four forfeiture actions in the Western District of Pennsylvania.

The parties subsequently settled the forfeiture actions and executed a settlement agreement on August 1, 2012. The settlement agreement included a release clause, wherein Rogers released his right to bring future claims "related to and/or in connection with or arising out of" the forfeiture actions.

On November 29, 2012, Rogers requested records from the IRS pursuant to the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. The IRS denied the request. On August 9, 2013, Rogers filed this FOIA action in the District Court for the Southern District of Ohio.

The parties filed a Rule 26(f) report pursuant to the Federal Rules of Civil Procedure. The report split discovery into two phases. Phase I included a "rolling production report plan" under which the IRS would review the documents it had determined responsive to Rogers' FOIA request. According to the report, Phase I did not constitute formal discovery under Rule 26 of the Federal Rules of Civil Procedure, and the IRS could move for summary judgment before commencing Phase II.

On November 13, 2014, the IRS moved for summary judgment on the grounds that the parties entered into a settlement agreement which contained a release that affirmatively waived Rogers' right to bring his FOIA action. Rogers opposed the motion, arguing that (1) the IRS forfeited its right to rely on the release clause by not pleading it as an affirmative defense; (2) the IRS should be estopped from asserting the affirmative defense; and (3) the release clause did not apply because the FOIA claim was not related to the forfeiture actions.

The district court rejected Rogers' arguments and granted the IRS's motion for summary judgment. The district court held that the release's language was broad enough to encompass Rogers' FOIA action, noting that it "covers all claims, rights and demands 'of every kind' related to the forfeiture actions and discharges the [IRS] from all duties of every kind relating to the actions."

On April 10, 2015, Rogers filed this appeal. He raises the same arguments stated above.

## II.

### A. Forfeiture of Affirmative Defense

This Court reviews a finding that a party did not forfeit an affirmative defense for abuse of discretion. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir.1997). "Generally, an abuse of discretion is evident 'when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *Graham–Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560 (6th Cir.2000) (brackets omitted) (quoting *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir.1995)).

"A district court may, in its discretion, allow a defendant to raise an affirmative defense for the first time in a motion for summary judgment if doing so does not result in surprise or prejudice to the plaintiff." *Lauderdale v. Wells Fargo Home Mortg.*, 552 Fed.Appx. 566, 573 (6th Cir. 2014) (citing *Sushka*, 117 F.3d at 969).

In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

*Phelps v. McClellan,* 30 F.3d 658, 662–63 (6th Cir.1994).

Rogers notes that Rule 8(c) of the Federal Rules of Civil Procedure specifies "waiver," "release," and "accord and satisfaction" as affirmative defenses that must be raised in responsive pleadings. He argues that the IRS forfeited its right to rely on the release clause because it failed to raise the release as a defense in its answer.

■ Because we agree with the district court that under the circumstances of this case, Rogers cannot establish the existence of prejudice, we are unable to say the district court abused the discretion afforded it when it permitted the IRS to assert the defense. Rogers argues that he was prejudiced because the IRS allowed litigation to proceed for fifteen months before raising its defense. Although the IRS waited over a year to assert the defense, the delay does not appear to have prejudiced Rogers, since he received documents he was seeking during the rolling production process. And, manifestly, allowing the IRS to assert its affirmative waiver defense does not require Rogers to expend significant additional resources to conduct discovery and prepare for trial, as it puts an end to the litigation.

■ Similarly, Rogers' contention that he was surprised is without merit. A sophisticated party, he was represented by counsel when he signed the settlement agreement. The same lawyer who signed the settlement agreement represents Rogers in this action. Rogers should have anticipated that the IRS would raise the defense of waiver by release. And, Rogers had actual notice when the IRS raised the defense in its motion for summary judgment, and he was afforded ample opportunity to respond to it. *Stupak–Thrall v. Glickman,* 346 F.3d 579, 585 (6th Cir.2003) ("Because the plaintiffs had a fair opportunity to respond to the government's statute of limitations argument, we find that the plaintiffs suffered no prejudice and, therefore, the government did not waive their defense."); *Sushka,* 117 F.3d at 969 ("Failure to raise an affirmative defense by responsive pleading does not always result in waiver. The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond.") (internal citation omitted).

While the IRS could have been more diligent in raising its defense, we are unable to say the district court abused its discretion by permitting the IRS to raise the defense in its summary judgment motion.

**B. Estoppel by Conduct and Scope of the Release**

Rogers also contended that the IRS should be estopped from raising the release as a defense, and that his FOIA lawsuit does not fall within the scope of the release's language. We now turn to the issues of estoppel and the scope of the release. Having had the opportunity to review the record below, the briefs submitted by the parties, and benefitted from oral argument on these issues, we conclude that the district court correctly rejected Rogers' contentions for the reasons stated by the district court in its order of March 2, 2015, granting summary judgment to the IRS.

Rogers does raise a mutual mistake argument for the first time on appeal. In general, " '[i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court.' " *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir.2002) (quoting *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991)). We therefore decline to consider the argument.

## III.

The judgment of the district court is **affirmed.**

## CONCURRING IN PART AND DISSENTING IN PART

CLAY, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's holding that Rogers waived his ability to bring a FOIA claim against the IRS when he signed the release at issue. I write separately, in part, because I believe the issue—one of first impression in this circuit—merits additional analysis. I also write separately to dissent from the majority's holding that the IRS did not waive the defense of release.

## I.

For nearly ten years, the IRS conducted an investigation into several offshore gambling businesses owned by Rogers and two of his partners. The IRS suspected that Rogers and his partners, through their business in Antigua and Belize, illegally accepted sports bets from U.S.-based customers. As a result of the investigation, the IRS filed four civil forfeiture complaints in 2003 and 2004 under 18 U.S.C. §§ 981(a)(1)(A) and (C) against $10 million in assets allegedly traceable to the gambling business.

On August 1, 2012, Rogers eventually settled the forfeiture cases with the IRS by agreeing to forfeit $500,000 of his individual assets. The settlement agreement contains, in pertinent part, the following release provision:

> This release is conditioned upon the United States paying to Jon R. Rogers and releasing from arrest/seizure/freeze that portion of the Jon R. Rogers Assets set forth in paragraph four (4) above. By reason of and in reliance upon this Stipulation and Settlement Agreement, Jon R. Rogers, his assigns, and heirs, hereby unconditionally release and forever discharge the United States, its agents, servants, employees, officers, attorneys, insurers, successors, representatives and assigns (including without limitation any victims, persons or entities which receive the forfeited property or any portion thereof), and each of them, from and against any and all manner of claims, actions, causes of action, rights, set-offs, promises, allegations, expenses, assessments, penalties, charges, injuries, losses, costs, obligations, duties, suits, proceedings, debts, dues, contracts, judgments, damages, claims, counterclaims, liabilities and/or demands of every kind, character and manner whatsoever in law or equity, administrative or judicial, contract, tort (including negligence of all kinds) or otherwise, whether known or unknown, claimed or unclaimed, asserted or unasserted, suspected or unsuspected, discovered or undiscovered, choate or inchoate, accrued or unaccrued, anticipated or unanticipated, contingent or fixed, for, upon, or by reason of *any and all matters whatsoever, related to and/or in connection with or arising out of these Forfeiture Actions.*

(R. 37–7, Rogers Settlement, PageID# 1318 (emphasis added).)

The agreement defines "Forfeiture Actions" as the four civil forfeiture actions brought by the IRS against Rogers. Rog-

ers and his two attorneys signed the agreement, along with an attorney for the government. The agreement was then filed in federal district court in resolution of the civil forfeiture litigation. Criminal charges were never brought by the government as a result of this investigation.

On November 29, 2012, about four months after signing the agreement, Rogers submitted a FOIA request to the IRS. The 36–page request sought 71 categories of documents from the period 1993 through 2012 relating to the IRS' criminal investigation and the civil forfeiture actions. On December 12, 2012, the IRS acknowledged receipt of Rogers' FOIA request. After requesting and receiving additional information, the IRS ultimately denied the request in its entirety on February 28, 2013. The IRS cited a number of exemptions as its basis for refusing to provide the documents Rogers requested. This decision was affirmed in an administrative appeal.

On August 9, 2013, Rogers filed this suit against the IRS under the FOIA Act, 5 U.S.C. § 552, and the Privacy Act, *see id.* § 552a. Rogers' complaint alleged that the IRS possessed non-exempt records which it failed to provide him pursuant to his FOIA request. Rogers moved the district court to order the IRS to produce the non-exempt records, complete its search for responsive records, and award him attorney's fees and costs. The IRS never filed an answer to the complaint. Instead, it filed a partial motion to dismiss for failure to state a claim, directed toward that part of Rogers' complaint seeking an order requiring the IRS to complete its search for records.

While the motion to dismiss was pending, the parties agreed on a "rolling production and report plan" under which the IRS would review the 500,000 pages it had determined were responsive to Rogers' FOIA request. (R. 18, Rule 26(f) Report,

PageID# 180–84.) Under the plan, the IRS would issue monthly reports to Rogers identifying the records that it determined could be disclosed and those that it determined to be exempt. The IRS provided several monthly reports to Rogers. Based on the IRS' representation about the rolling production and report plan, the district court denied the IRS' partial motion to dismiss without prejudice.

On November 13, 2014, more than a year after Rogers filed his lawsuit, the IRS moved for summary judgment on the grounds that the August 2012 release waived future claims from Rogers, including his FOIA complaint. In his opposition to that motion, Rogers argued that the IRS waived its ability to rely on the release by not pleading it as an affirmative defense under Federal Rule of Civil Procedure 8(c)(1). Rogers also argued that the IRS was estopped from relying on the release because it had considered the FOIA request on the merits. Finally, Rogers argued that the release agreement did not extend to his FOIA complaint. The district court disagreed with Rogers and granted the IRS' summary judgment motion.

## II.

While it would appear that Rogers waived his ability to bring a FOIA claim against the IRS when he signed the release agreement, this issue requires a much more thorough analysis than that provided by the majority.

The release and settlement at issue was entered into pursuant to 28 U.S.C. § 2465, which governs the return of property in forfeiture proceedings. Because the agreement at issue involves the United States and was entered into pursuant to a federal statute, federal common law applies. *United States v. Seckinger,* 397 U.S. 203, 209–10, 90 S.Ct. 880, 25 L.Ed.2d 224

(1970); *Gillham v. Tennessee Valley Auth.*, 488 Fed.Appx. 80, 83–84 (6th Cir. 2012). Federal common law likewise governs the validity of a release of a federal cause of action. *Dotson v. Arkema, Inc.*, 397 Fed.Appx. 191, 194 (6th Cir.2010) (citation omitted).

A release is a contract subject to principles of contract interpretation. *See Hauf v. Life Extension Found.*, 454 Fed.Appx. 425, 430 (6th Cir.2011) ("The general rules governing the construction of contracts are applicable in the construction of written releases.") (citation omitted). "The general rules of contract law require that courts interpret contracts according to their plain meaning, in an ordinary and popular sense." *Gillham*, 488 Fed.Appx. at 84 (citations and quotations omitted). The basic goal of contract interpretation is to give effect to the intent of the parties. *In re AmTrust Fin. Corp.*, 694 F.3d 741, 749 (6th Cir.2012). "Where a contract's meaning is clear on its face, that meaning controls." *Id.* at 750 (citation omitted). Additionally, courts are more likely to enforce express terms in a release when counsel represents sophisticated parties in drafting the release. *See, e.g., Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1040 (9th Cir.2011); *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1283–84 (5th Cir.1989).

In a number of contexts, courts have upheld contractual releases of future claims. *See, e.g., Nicklin v. Henderson*, 352 F.3d 1077, 1081 (6th Cir.2003) ("The settlement was a general release of all [the employee's] claims" because "the plain language of the agreement unambiguously cover[ed] all his claims."); *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir.1986) ("A general release of Title VII claims does not ordinarily violate public policy.") (citation omitted); *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir.1977) ("When, as here, a

release is signed in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if the language of the release is clear, ... the intent of the parties [is] indicated by the language employed.") (alteration in original) (citations and quotations omitted); *Richard's Lumber & Supply v. United States Gypsum Co.*, 545 F.2d 18, 20 (7th Cir.1976) ("A general release, or a broad covenant not to sue, is not ordinarily contrary to public policy simply because it involves antitrust claims.").

The issue here is narrower than any suggested by these basic principles. It is whether Rogers' FOIA claim is covered and precluded by the broad language of the release he signed. The IRS says yes. Rogers, on the other hand, argues that he and the IRS never intended the release to include claims made under the FOIA.

Only one federal court appears to have confronted this issue. The District of Columbia District Court addressed the question in *Pub. Emps. for Envtl. Responsibility v. U.S. EPA*, 926 F.Supp.2d 48, 54 (D.D.C.2013). In that case, Dr. Richard Hammer, an employee of the Environmental Protection Agency ("EPA"), filed a workplace complaint of harassment that was investigated by an outside contractor, Dr. Peter Maida. *Id.* at 51. During his employment with the EPA, Dr. Hammer made two FOIA requests and one request under the Privacy Act for a copy of Dr. Maida's contract, his report, and "[a]ll emails between Peter Maida and [the] EPA that pertain to [Dr. Hammer] in any way." *Id.* at 52 (alteration in original) (citations and quotations omitted). The EPA released Dr. Maida's contract and payment records but withheld the report he authored under a FOIA exemption. *Id.*

Dr. Hammer appealed only the EPA's refusal to release the report, but that deci-

sion was affirmed by the EPA's Office of General Counsel. *Id.* Dr. Hammer then filed an Equal Employment Opportunity complaint with the EPA Office of Civil Rights alleging employment discrimination. *Id.* After his discharge from the EPA, Dr. Hammer filed a complaint with the Merit Systems and Protection Board alleging that his discharge lacked just cause. *Id.* Both complaints were settled by the EPA and Dr. Hammer. *Id.* By the terms of the settlement, Dr. Hammer "withdrew with prejudice all appeals, complaints, grievances, claims, or civil actions against [the] EPA concerning any incidents, personnel actions, Agency decisions or determinations, or terms or conditions of employment." *Id.* (citations and quotations omitted). Dr. Hammer also agreed not to file "any new appeal, complaint, grievance, claim, or civil action" against the EPA "concerning any incidents, personnel actions, Agency decisions or determinations, or terms or conditions of employment." *Id.* (citations and quotations omitted). For its part, the EPA cancelled Dr. Hammer's discharge and recorded that he had resigned. *Id.* Dr. Hammer was represented by counsel in negotiating the settlement agreement. *Id.* at 53.

Several months later, Public Employees for Environmental Responsibility ("PEER"), a non-profit organization that works on behalf of EPA employees, submitted a FOIA request to the EPA for the same report, but that request was denied. *Id.* at 53–54. PEER and Dr. Hammer then sued the EPA under the FOIA to obtain the report. *Id.* at 53.

The court's analysis was rather brief, going no further than recognizing that because "[a] settlement agreement is a contract, and Dr. Hammer is bound by the contract he signed," he was precluded from filing a FOIA request. *Id.* at 54. The court reasoned that as part of the settlement agreement, Dr. Hammer expressly agreed not to institute any complaint or civil action in the future. *Id.* The court found that Dr. Hammer's FOIA claim "was covered and precluded by the broad language of the settlement agreement." *Id.* The court also reasoned that because Dr. Hammer was a sophisticated party represented by counsel, it did not need to look beyond the language of the release. *Id.* Rather, the court found, the agreement spoke for itself. *Id.* According to the court, the "settlement agreement should be construed for enforcement purposes basically as a contract." *Id.* (citations and quotations omitted). Based on these principles, the court "ha[d] no hesitancy in holding Dr. Hammer to the bargain he struck." *Id.*

If *Public Employees* were to apply to the case at hand, the analysis would be rather straightforward. The release at issue reads, in pertinent part:

> [Rogers] ... *hereby unconditionally release[s]* and forever discharge[s] the United States ... from and against *any and all manner of claims,* actions, causes of action, rights, ... suits, proceedings, ... and/or demands of every kind, whether known or unknown, claimed or unclaimed, asserted or unasserted, suspected or unsuspected, ... choate or inchoate, accrued or unaccrued, anticipated or unanticipated, ... any and all matters whatsoever, *related to and/or in connection with or arising out of these Forfeiture Actions.*

(R. 37–7 at 1318 (emphasis added).)

The language of the release is broad. It is also very general. When one looks at the "causes of action, rights, ... suits, proceedings, ... and/or demands of every kind" language, one cannot help but conclude that the release includes an action under the FOIA. Under *Public Employees,* there is no fair way to read the lan-

guage of the release other than as fully encompassing any manner of claims.

*Public Employees* would also suggest that whether Rogers really intended to release his FOIA rights under the release is one of those subjective questions that this Court cannot answer. Instead, this Court must read the words for what they say. Rogers is, by all accounts, a sophisticated party. And like Dr. Hammer, Rogers was represented by counsel when he signed the agreement—two attorneys to be exact. This is the agreement that he made. Just like the agreement in *Public Employees*, the agreement here is clearly expressed. This Court's function, therefore, should be a limited one—it is to give meaning and substance to the words that the parties freely choose.

Without any case law to the contrary, there is no reason not to follow the reasoning of *Public Employees* and hold that Rogers—a sophisticated party represented by two attorneys—is bound by the contract he signed. Therefore, his FOIA claim is covered and precluded by the broad language of the release. For these reasons, I concur in the majority's holding affirming the district court's decision in this respect.

### III.

Once again, however, the analysis cannot end there because Rogers raises a number of other arguments related to the nature of his FOIA claim. First, he argues that the release he signed does not bar his FOIA claim because the release was executed before his FOIA claim arose. In other words, he argues that his FOIA claim did not accrue until the IRS denied his request. But the terms of the release are unambiguous: Rogers agreed to give up "any and all manner of claims . . . *whether accrued or unaccrued,* . . ." (R. 37–7 at 1318 (emphasis added).) The release speaks for itself, and it clearly and un-equivocally shows that Rogers specifically agreed to release unaccrued claims.

But even if Rogers had not agreed to release unaccrued claims, his FOIA claim arose well before the release was executed. Rogers' FOIA request sought documents dating back to 1993. The civil forfeiture actions were filed in 2003 and 2004 and continued until the 2012 settlement. Rogers could have submitted his FOIA request at any time prior to the 2012 settlement. The fact that he chose to submit his request four months after signing the release does not mean that his claim was unaccrued on the date of the settlement. In other words, Rogers did not have to settle the forfeiture suits before his FOIA claim could be considered as having arisen.

Somewhat relatedly, Rogers also argues that he was not aware of the potential for a FOIA claim when he signed the release. However, he submitted an extraordinarily lengthy and detailed FOIA request just four months after he signed the release. The timing alone suggests that Rogers and his attorneys were at least aware of the potential for a FOIA claim at the time the release was executed. And regardless, as far as can be determined, all the circuits to have considered the issue agree that a party can release both unaccrued *and* unknown claims. *See, e.g., Convey Compliance Sys., Inc. v. 1099 Pro, Inc.,* 443 F.3d 327, 331 (4th Cir.2006); *Brennan's, Inc. v. Dickie Brennan & Co.,* 376 F.3d 356, 366–67 (5th Cir.2004); *Wagner v. NutraSweet Co.,* 95 F.3d 527, 532–34 (7th Cir.1996); *Shlensky v. Dorsey,* 574 F.2d 131, 144 (3d Cir.1978).

Second, as the majority alludes to, Rogers asks this Court to declare void the release he signed. Generally, "[a] signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake." *Three Rivers Motors Co. v. Ford Motor Co.,* 522

F.2d 885, 892 (3d Cir.1975). Rogers argues that one of these exceptions, mutual mistake, is applicable in this case. He claims that there was a mistake in executing the release because it "defies common sense" that the IRS intended to bar him from bringing a FOIA claim. (Pl.'s Br. at 33–35.) The IRS says that is precisely what it intended; in other words, that the release was so broadly worded to ensure it would never have to engage in litigation of any sort with Rogers.

Rogers did not raise this argument in the district court. In general, "[i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court." *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002) (alteration in original) (citations and quotations omitted). However, this Court "ha[s], on occasion, deviated from the general rule in exceptional cases ... or when the rule would produce a plain miscarriage of justice." *Id.* (citations and quotations omitted). Even then, the new issue must be "presented with sufficient clarity and completeness" for this Court to resolve the issue. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir.1988). "The *Pinney Dock* exception is most commonly applied where the issue is one of law and further development of the record is unnecessary." *McFarland*, 307 F.3d at 407 (citations and quotations omitted).

This is not such a case. In order to rule on Rogers' allegations of mutual mistake, this Court would need to do much more than simply apply the law to the facts as they are alleged in Rogers' complaint. There are no facts in Rogers' complaint or in any of his district court pleadings that can be construed to support the existence of mutual mistake. By addressing the merits of this argument, this Court would be "designing [Rogers'] theory of liability for him, including the facts and the law."

*Cheatom v. Quicken Loans*, 587 Fed.Appx. 276, 284 (6th Cir.2014). Therefore, the majority correctly declines to reach this argument on the merits.

Rogers' final argument is that his FOIA claim does not arise from and is not related to the civil forfeiture actions. Rather, he says his claim arises from the IRS' decision to withhold documents in response to his FOIA request. However, this argument defies common sense. Without the civil forfeiture actions, Rogers would not have submitted his FOIA request because there would have been nothing to request. And even if the FOIA action is somewhat attenuated from the civil forfeiture actions themselves, it seems clear that Rogers' complaint related to and arises out of the civil forfeiture actions. To be sure, the FOIA request specifically references each civil forfeiture action in its first three pages.

Along the same lines, Rogers argues that the district court erred by conflating the civil forfeiture proceedings with the criminal investigation. He says that the district court should have made a distinction between documents generated during the criminal investigation and those generated during the civil forfeiture proceedings. The problem with this argument is that in the context of forfeiture proceedings, there is generally not a clear separation between the criminal and civil cases. But even when there is a clear separation, courts generally find relatedness between the two cases if there are common facts, similar alleged violations, and common parties. *See, e.g., United States v. $6,976,934.65, Plus Interest*, 554 F.3d 123, 131 (D.C.Cir.2009) ("[T]he question is whether the facts that underlie the [criminal] prosecution ... also form the basis for the forfeiture action.").

The criminal investigation of Rogers is unquestionably related to the forfeiture ac-

tions. Both were based on the exact same facts (the offshore gambling business), involved the same criminal allegations (illegally accepting sports bets from U.S.-based customers), and concerned the exact same parties (Rogers and his partners). Additionally, the government's case-in-chief in the civil forfeiture cases was based on Rogers' assets being derived from the proceeds of criminal activity; this in and of itself suggests that the two cases were related. Because the two cases were so intertwined, there would have been no conceivable way for the IRS to separately categorize documents as pertaining to either the criminal investigation or the civil forfeiture actions.

The bottom line is that the district court correctly held that Rogers' FOIA claim is covered and precluded by the broad language of the release he signed. The language plainly states that Rogers released the IRS from any and all manner of claims. At best, there may be ambiguity as to which "claims" are included by the release, but there does not appear to be any ambiguity about which types of claims are released. On this issue, I agree with the majority that Rogers' FOIA claim falls within the scope of the release he signed.

## IV.

While I agree with the majority that the IRS was not estopped from relying on the release, the IRS was precluded from relying on the release because of its failure to timely assert its rights pursuant to the release. Contrary to the IRS' argument, the IRS should not have been permitted to raise the defense of release in its summary judgment motion—a motion which was filed *more than a year after* the lawsuit began. To be blunt, if this situation—tantamount to neglectful silence—does not amount to waiver, then nothing will.

Federal Rule of Civil Procedure 8(c)(1) provides the basic rule for affirmative defenses: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). Rule 8(c)(1) specifically lists "waiver" as an affirmative defense. *Id.* The general rule in federal court is that a party's failure to plead specifically any given affirmative defense will result in waiver of that defense. *See, e.g., Wood v. Milyard,* —— U.S. ——, 132 S.Ct. 1826, 1832, 182 L.Ed.2d 733 (2012) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.") (citations and quotations omitted); *Arizona v. California,* 530 U.S. 392, 410, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("[A]n affirmative defense [is] ordinarily lost if not timely raised.").

Like the Supreme Court, this Court has held that "[a]s a general rule, failure to plead an affirmative defense results in a waiver of that defense." *Old Line Life Ins. Co. of Am. v. Garcia,* 418 F.3d 546, 550 (6th Cir.2005) (citation omitted). "The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1445 (6th Cir.1993) (citation omitted). It is true that "[a] district court may, in its discretion, allow a defendant to raise an affirmative defense for the first time in a motion for summary judgment if doing so does not result in surprise or prejudice to the plaintiff." *Lauderdale v. Wells Fargo Home Mortg.,* 552 Fed.Appx. 566, 573 (6th Cir. 2014) (citation omitted).

Whether or not a court will find prejudice depends in large part on the amount of time a party had to bring the affirmative defense and its reason for not doing so earlier. *See, e.g., Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 824 (6th Cir. 1990) (delay of nineteen months was held

to establish prejudice). A court will also consider the time and expense of discovery. *See, e.g., Data Digests, Inc. v. Standard & Poor's Corp.,* 57 F.R.D. 42, 45–46 (S.D.N.Y.1972).

What all this comes down to is this: where there is unfair prejudice, a party is taken by surprise, or unnecessary delay, the general waiver rule applies; on the other hand, where there is no unfair prejudice, surprise, or delay, the general waiver rule is left to the district court's discretion. *See Moore, Owen, Thomas & Co.,* 992 F.2d at 1445.

All of those factors, which establish prejudice, are present here. Rogers submitted his FOIA request just four months after he signed the release agreement with the IRS. That release agreement marked the end of a near ten-year long investigation by the IRS into Rogers' offshore gambling business. It is difficult to believe that the IRS—having just signed a settlement agreement stemming from an investigation that spanned so many years— would have been unaware of the release it signed four months earlier. Yet when the IRS responded to Rogers' request just two weeks later, it did not point to the release as it should have. The IRS did not, in the first instance, tell Rogers that the agreement he signed released it from any obligation under the FOIA to produce records relating to the civil forfeiture actions.

Instead, the IRS acknowledged receipt of Rogers' request and asked him to send more information. When the IRS denied Rogers' request in its entirety about two and a half months later, it cited a number of exemptions under the FOIA and left out the fact that the release applied to Rogers' request. The IRS got its third opportunity to point to the release when it considered Rogers' administrative appeal—but no such luck for Rogers there. Not once in the near five-month long period, that began with Rogers' request and ended

with the denial of his appeal, did the IRS even remotely refer to the release.

Even giving the IRS the benefit of the doubt that its FOIA examiners may not have known about the release, counsel for the IRS certainly should have known about the release when it was served with Rogers' complaint. But the IRS did not mention the release when it filed a motion to dismiss. Nor did the IRS mention the release during the time it issued monthly reports to Rogers identifying the records that it determined could be disclosed and those it determined to be exempt. Not once in the 461 days between receiving Rogers' complaint and filing its motion for summary judgment did the IRS even mention the release.

Only one of two scenarios is possible here: (1) either the IRS waited two years to raise the waiver defense, with no good reason for the delay, or (2) the IRS had a eureka moment in the middle of litigation. Either way, Rogers should not have to bear the brunt of something the IRS should have done two years earlier.

This dissent should not be construed as applying the Federal Rules of Civil Procedure to the IRS' administrative process. Nor am I suggesting that the IRS was required to assert an affirmative defense in its initial FOIA response. The analysis here is based solely upon the IRS' failure to assert its affirmative defense in the litigation proceedings until 461 days after being served with the complaint. That being said, when considering whether or not Rogers had been prejudiced, one cannot help but take notice of the equities involved when considering the time in which Rogers' request sat on someone's desk without one mention of the release.

While the majority maintains that there was no prejudice to Rogers, the facts suggest otherwise. Through all this time, Rogers no doubt spent a significant

amount on attorney's fees, as well as time and effort in connection with responding to the IRS' various communications and filings. There was considerable delay in this matter and the IRS has presented no reason why this defense was not raised in a timely manner. And while the majority also maintains that the IRS' reliance on the release could not have surprised Rogers, there can be little doubt that Rogers was met with surprise when the IRS mentioned the release for the first time in 461 days (or two years counting from the time Rogers submitted his FOIA request). Moreover, the fact that Rogers contends that he does not believe his FOIA claim falls within the scope of the release he signed suggests that he never expected the IRS to raise this as a defense. These circumstances remove this case from the protections that Rule 8(c)(1) was intended to provide. The district court should have never allowed the IRS to plead this defense when it did. That decision was an abuse of discretion and should be reversed.