NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0534n.06

No. 20-1991

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NATALIE C. QANDAH, | ) | **FILED** |
| | ) | Nov 22, 2021 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| JOHOR CORPORATION; YB DATO | ) | UNITED STATES DISTRICT |
| KAMARUZZAMAN BIN ABU KASSIM, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: BOGGS, GRIFFIN, MURPHY, Circuit Judges.

GRIFFIN, Circuit Judge.

According to Natalie Qandah, her former employer defrauded her, discriminated against her, and emotionally abused her. But instead of suing her old bosses, she has sued a Malaysian governmental entity that had only a tangential relationship with her former employer. Given that there was no direct link between this entity and the harms alleged, the district court held that Qandah's suit was barred by the Foreign Sovereign Immunities Act ("FSIA"). Because the district court properly applied the law to sound factual findings, we affirm.

I.

Johor is one of the thirteen states that form Malaysia. In 1968, the Johorian government established the Johor Corporation ("JCorp"), an "investment holding entity" designed to encourage economic development in the region. JCorp is, and has always been, wholly owned by the State of Johor.

During the timeframe relevant to this action, JCorp had hundreds of direct subsidiaries, including Johor Logistics, which in turn owned 80% of the Asia Logistics Council ("ALC"). The other 20% of ALC was owned by the World Logistics Council. Throughout the relevant time, neither JCorp nor any JCorp subsidiary had any ownership interest in the World Logistics Council.[1]

The World Logistics Council had a wholly owned subsidiary, WLC SA. In August 2013, WLC SA hired Natalie Qandah, a Michigan attorney, as in-house counsel for its affiliate, the Global Coalition for Efficient Logistics ("GCEL"), in Dearborn, Michigan.

According to Qandah, GCEL was a terrible place to work. She contends that, as a Christian woman in an office of "primarily Muslim men," she was discriminated against because of her gender and religion. GCEL allegedly required her to work on Christian holidays (even though her Muslim co-workers did not have to work on Islamic holidays) and pressured her to convert to Islam. She also alleges that her employer withheld her paycheck because she is a woman and that promised equity packages and pay raises never materialized. Less than a year after she started, WLC SA fired Qandah.

After her termination, Qandah informed JCorp that she intended to file a lawsuit against it for the harm she suffered as a WLC SA employee. She claims that, shortly after providing this notice, JCorp's chief executive officer YB Dato Kamaruzzaman Bin abu Kassim ("Kassim") "directed, ordered and financed the filing of a false and malicious grievance against [her] with the Michigan Attorney Grievance Commission."

---

[1]Later, ALC acquired a 5% ownership stake in the World Logistics Council for approximately $50 million. ALC transferred half of this sum before or during Qandah's employment with WLC SA, but did not receive any equity in the World Logistics Council until after her termination.

True to her word, Qandah filed this lawsuit against JCorp and Kassim, raising discrimination and tort claims. Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that the district court lacked subject-matter jurisdiction because the FSIA immunized them from suit in the United States. Qandah responded, arguing that defendants did not qualify for FSIA protections and that, even if they did, the Act's "commercial activity" exception and "tortious act" exception negated their immunities.

The district court ordered limited discovery on its jurisdiction, after which defendants renewed their motion to dismiss on FSIA grounds. The district court granted this motion, but we reversed that decision because it misapplied the FSIA's burden-shifting framework by placing the burden of persuasion on plaintiff. *Qandah v. Johor Corp.*, 799 F. App'x 353, 360 (6th Cir. 2020). On remand, defendants renewed their motion again, and the district court again dismissed the case for lack of subject-matter jurisdiction, this time ensuring that the burden of persuasion remained with defendants. Qandah then filed this timely appeal.

II.

Qandah challenges the district court's decision to dismiss her suit for lack of subject-matter jurisdiction. At the outset, we must determine how to review the district court's order. As a general matter, we review de novo questions of subject-matter jurisdiction. *O'Bryan v. Holy See*, 556 F.3d 361, 372 (6th Cir. 2009). But the nature of the decision below adds an extra layer to the standard. The court adjudicated a factual attack on subject-matter jurisdiction under Rule 12(b)(1). Unlike failure-to-state-a-claim challenges or facial attacks on subject-matter jurisdiction, factual attacks do not require the district court to accept plaintiff's version of the facts. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Instead, "the district

court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.*

Here, the district court examined the facts before it and concluded that it lacked subject-matter jurisdiction. On appeal, we "accept the district court's findings of fact unless the findings are clearly erroneous[,]" but "review de novo the district court's legal conclusions regarding those facts." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lyngaas v. Ag*, 992 F.3d 412, 419 (6th Cir. 2021) (quotation omitted).

### III.

The FSIA lies at the heart of this appeal. Under that statute, "a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007); *see* 28 U.S.C. § 1604. Determining whether defendants are entitled to FSIA immunity involves a "unique burden-shifting framework." *Qandah*, 799 F. App'x at 357. First, defendants bear the burden of proof to establish that JCorp is a "foreign state" under the FSIA's definition of that term. *O'Bryan*, 556 F.3d at 376. "[O]nce this prima facie case is established, the burden of production shifts to [Qandah] to show that an exception applies." *Id.* But defendants "retain[] the burden of persuasion throughout this process." *Id.* This means that they must "prove by a preponderance of the evidence" that no asserted exception applies. *Qandah*, 799 F. App'x at 360.

Because granting immunity to individual foreign officials (rather than states) has additional requirements, *see infra* Section IV, we will start with JCorp.

A.

At the first step, Qandah briefly argues that JCorp failed to prove that it is a foreign state. But she ignores that, in her first appeal, we affirmed the district court's holding that JCorp is "a foreign state for the purposes of the FSIA." *Qandah*, 799 F. App'x at 358. This holding is the law of the case, *see Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006), and enough for JCorp to satisfy its first-step burden now.

B.

Because JCorp satisfied its burden at the first step, Qandah must produce evidence that at least one FSIA exception applies. *O'Bryan*, 556 F.3d at 376. She believes that the record supports applying the commercial-activity exception and/or the tortious-act exception. We take each exception in turn.

i.

The commercial-activity exception allows a foreign government to be sued in the United States if the lawsuit is "based upon" (1) "a commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The statute's use of the phrase "based upon" means that "[t]he commercial activity relied upon by a plaintiff for jurisdictional purposes must be directly connected to the activity for which the plaintiff brings suit." *Glob. Tech.*, 807 F.3d at 812 (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993)).

Qandah relies on four aspects of the record to show that her lawsuit qualifies for the commercial-activity exception. First, she points to an affidavit submitted by GCEL's former

Director of Finance, Steve Szirmai, which asserts that "[t]he GCEL and WLC entities were operated as one organization at the direction of [Kassim] . . . on behalf of JCorp." Next, she submitted her own affidavit, which largely aligns with the Szirmai affidavit and further asserts that she performed work in the United States directly for JCorp and its subsidiaries. She then identifies a 2012 letter sent by JCorp to WLC SA, asking for "more details" on its progress in recruiting employees and deciding on a domicile. Finally, she highlights an email that Kassim sent after receiving notice that Qandah was threatening litigation, in which he warns WLC SA to "prepare to cover all angels [sic]" because he "was told [Qandah is] adamant to pursue the claims." In all, she argues that this evidence compels the conclusion that JCorp conducted business domestically and directed WLC SA's commercial activity in the United States.

The district court viewed this evidence differently. It saw Szirmai and Qandah's testimony as "[l]egal conclusions" that "need not be accepted[.]" It also found that the JCorp letter was "not a direction, let alone an enforceable command, to hire [Qandah] or other American employees," and that Kassim's email was "not a direction" to take adverse action against Qandah. Instead, the court credited defendants' evidence, which showed that "[t]he only connection from JCorp to [WLC SA] is through a series of subsidiaries and secondary investments." The court observed that, although "JCorp, through ALC, appears to have been an important commercial partner to [WLC SA]," it lacked "any legally enforceable interest that would allow it to direct, manage, and control the operations of [WLC SA.]" The court found that JCorp's commercial activities were limited to "investments and management of corporate entities," and "did not extend to the hiring, discrimination, and termination of [Qandah]." Because JCorp's commercial activities were therefore not directly connected to the conduct underlying Qandah's suit, the court held that the exception did not apply.

The district court's finding that JCorp's commercial activities were limited to investing in entities separate from WLC SA is a factual finding, which we review only for clear error. *Global Tech.*, 807 F.3d at 810. This finding is not clearly erroneous. Defendants introduced evidence on JCorp's corporate structure, which showed that it had no ownership interest in, or direct control over, World Logistics or WLC SA during the relevant time periods. The district court did not clearly err by crediting this evidence over Qandah's conclusory assertions to the contrary. *See Gentek Bldg.*, 491 F.3d at 330.

Moreover, the district court's criticism of Qandah's documentary evidence is well-taken. The 2012 JCorp letter—which preceded Qandah's employment by more than a year—only reminded WLC SA of the "importance of expediently deciding [its] domicile," and requested "details on the progress of [WLC SA's] Human Resources intake to-date and [its] recruitment plans going forward." Contrary to Qandah's characterization, the letter did not direct WLC SA to hire employees in the United States or elsewhere. Similarly, Kassim's email only shows him opining that WLC SA "must prepare to cover all angels [sic]" in response to Qandah's legal claim. Qandah's argument that this email is really Kassim directing WLC SA to file a grievance against her is simply not supported by what the message actually says.

Qandah also asserts that the district court ignored the Szirmai affidavit. As a factual matter, she is wrong; the district court discussed the Szirmai affidavit in its latest dismissal order. *See Qandah v. Johor Corp.*, Case No. 17-11126, 2020 WL 5944459, at *4 (E.D. Mich. Oct. 7, 2020) (citing "ECF No. 54-20," a record designation of the Szirmai affidavit). And even if it had not discussed that affidavit, the district court was not "obliged to recite and analyze individually each and every piece of evidence presented by the parties." *See Qandah*, 799 F. App'x at 359 n.5 (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1353 (11th Cir. 2005)). Qandah's

real argument appears to be that the district court did not give enough weight to the Szirmai affidavit. But, absent clear error, assigning weight is the province of the district court as fact finder. *See Gentek Bldg.*, 491 F.3d at 330. And it was not clearly erroneous for the district court to conclude that the Smirzai affidavit—like Qandah's own affidavit—was entitled to little or no weight because it was conclusory.

Given the district court's not-clearly-erroneous finding that JCorp's commercial activity did not include the acts upon which Qandah bases her action, it correctly declined to apply this exception. JCorp owned subsidiaries that partially owned another company that worked with Qandah's employer's parent company. JCorp had no ownership interest in or control over the company responsible for the conduct that Qandah complains of in her suit and thus its commercial activity lacks a direct connection to her alleged injuries. Accordingly, the commercial-activity exception does not apply.

ii.

The tortious-act exception strips immunity from foreign governments in any case where the plaintiff seeks money damages for a personal injury "(1) occurring in the United States; (2) caused by a tortious act or omission; (3) where the alleged acts or omissions were those of a foreign state or of any official or employee of that foreign state; and (4) those acts or omissions were done within the scope of tortfeasor's employment." *O'Bryan*, 556 F.3d at 380–81 (citing 28 U.S.C. § 1605(a)(5)) (internal quotation marks and alterations omitted).

The district court held that a lack of the second element—causation—barred this exception. It found that, "by a preponderance of the evidence, [Qandah's] alleged hiring, discrimination, firing, and attorney grievance complaint were not caused by the actions of [JCorp] or of any official or employee of [JCorp]." "[C]ausation, or the lack of it, is generally a question of fact[.]" *Toth v.*

*Yoder Co.*, 749 F.2d 1190, 1196 (6th Cir. 1984) (applying Michigan law); *see O'Bryan*, 556 F.3d at 381 ("In determining whether the tortious act exception applies, courts, as a rule apply state substantive law."). So we review the district court's lack-of-causation finding for clear error. *Glob. Tech.*, 807 F.3d at 810.

The district court's finding is not clearly erroneous. Based on defendants' evidence, the district court could have reasonably concluded that Qandah's employer was separate and distinct from JCorp, which contradicts the conclusory testimony of her and Szirmai's affidavits. Nor does her proffered documentary evidence support a definite and firm conviction that the district court erred in finding that defendants were not involved in the alleged tortious acts. The JCorp letter shows nothing more than that company's gentle nudging of a collaborator to take certain steps to further their joint goals. There is no connection between that letter and the mistreatment that Qandah suffered at WLC SA more than a year later. And Kassim's vague advice to "cover all angels [sic]" does not compel the conclusion that he was directing anyone to file a grievance against Qandah. Because the district court found that defendants did not cause Qandah's alleged injuries, it correctly held that the tortious-act exception does not apply.

In sum, the district court weighed the evidence, properly allocated the relevant burdens, and concluded that JCorp was immune from suit under the FSIA. Because the court correctly applied the law to its sound factual findings, we affirm the district court's grant of immunity to JCorp.

## IV.

We now turn to Kassim. FSIA immunity does not extend to "an official acting on behalf of the foreign state." *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010). However, "some actions against foreign officials in their official capacity should be treated as actions against the foreign

state itself because the state is the real party in interest." *Qandah*, 799 F. App'x at 360 (citing *Samantar*, 560 U.S. at 325).[2] The district court applied this official-capacity doctrine to grant immunity to Kassim.

Qandah challenges the district court's grant of immunity to Kassim, first arguing that the court erred by allowing him to assert this defense despite his failure to list it in his answer. "This Court reviews a finding that a party did not forfeit an affirmative defense for abuse of discretion." *Rogers v. I.R.S.*, 822 F.3d 854, 856 (6th Cir. 2016). A district court may allow a defendant to raise an untimely affirmative defense "if doing so does not result in surprise or prejudice to the plaintiff." *Id.*

Here, the district court allowed Kassim to proceed on this defense because Qandah was on notice that he was claiming immunity based on foreign sovereignty and had ample opportunity to respond. This decision was well within the district court's discretion. Both defendants have consistently argued for foreign immunity since this case was first filed more than four years ago. Kassim's argument is merely an offshoot of this broadside attack on jurisdiction. *See Samantar*, 560 U.S. at 325. And Qandah had a full opportunity to respond to Kassim's claim of foreign immunity during the post-remand motion practice. Kassim's raising of this argument was not surprising or prejudicial, so the district court did not abuse its discretion in excusing any tardiness.

---

[2]We note that *Samantar* may not have placed the existence of an official-capacity exception beyond all doubt. *See* 560 U.S. at 325 ("*Or it may be the case* that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest." (emphasis added)). But because Qandah does not argue against this exception (and, indeed, appears to concede its existence in this case by arguing that Kassim failed to carry his burdens under the FSIA framework), we leave this question for another day. We also need not decide the scope of any common law foreign official immunity because the parties only address the official-capacity question. *See Samantar*, 560 U.S. at 322 n.17, 325–26.

Next, Qandah argues that Kassim has "fail[ed] to carry [his] burden of proof and persuasion on this assertion of immunity," and that he cannot invoke foreign immunity because he is the head of a corporate—not governmental—entity. As explained above, however, JCorp is an organ of the Johorian government and has carried its burden to receive FSIA immunity. Thus, if Qandah has brought this suit against Kassim in his official capacity and JCorp is the real party in interest, he is also immune from suit. *Qandah*, 799 F. App'x at 360.

In *Samantar*, the Supreme Court briefly analogized this potential official-capacity exception to official-capacity suits under 42 U.S.C. § 1983. 560 U.S. at 325 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Under § 1983, our court treats suits against state actors presumptively as suits in their official capacity (in which case they cannot be held liable for damages) rather than in their personal capacity (in which case they can be). *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). When the plaintiff's complaint does not make clear whether a defendant is sued in an official or personal capacity, we make this determination by examining factors such as the way defendants are named in the complaint, whether the complaint's language indicates an individual-capacity suit, and whether the complaint seeks damages in general or damages from each individual. *See Vittetoe v. Blount Cnty*, 861 F. App'x 843, 2021 WL 2472357, at *7 (6th Cir. 2021).

A review of Qandah's operative complaint makes clear that she sued Kassim only in his official capacity. Her complaint's caption states that she is suing Kassim "as CEO of Johor Corp." She further alleges that "at all pertinent times associated with the facts underlying this complaint" Kassim "engage[d] in business and/or activities . . . on behalf of Defendant Johor Corporation, its Organization and constituents." She also almost exclusively refers to JCorp and Kassim as "the Defendants" and makes only a general demand for damages without specifying the source. In

short, Qandah's complaint is best read as suing Kassim only in his official capacity for acts he allegedly caused JCorp to commit. Because the company is immune from suit, so is Kassim in his official capacity.

V.

For these reasons, we affirm the district court's judgment.